**ROBERT L. WEED, ARCHITECT, INC., a Florida corporation, v. MARIE M. HORNING, et al.**

33 So. (2nd) 648

December 16, 1947

June Term, 1947

Special Division A

*J. E. Yonge, Thomas H. Anderson* and *Harry L. Nadeau,* for appellant.

*Ward & Ward, Rogers, Morris & Griffis* and *Berryhill & Leaird,* for appellee.

TERRELL, J.:

In August 1937, Broward Tomato Farms, a Florida corporation, leased a tract of land in Broward County to Hollywood Jockey Club, Inc., for a term of twenty years. In addition to the primary consideration for the lease, the lessee agreed to pay all taxes, assessments, liens and obligations imposed on the leased lands, and the improvements placed thereon, in compliance with the lease. The lessee also agreed that prior to the first day of January 1939, it would expend not less than $500,000. in the construction of such buildings and improvements on the leasehold as might be necessary to the operation of a first class race track.

In order to execute the latter provision of the lease, the lessee, in January 1939, entered into contract with Robert L. Weed, Architect, Inc., to design the grandstand, club house, administration building, stables, and other buildings essential to the operation of the race track. It was agreed that six per cent of the cost should be paid Weed for planning and supervising these buildings. It is not denied that Robert L. Weed, Architect, Inc., complied with its contract in full.

In January 1939, the fee simple title of the leasehold was conveyed to Marie M. Horning, subject to the lease of Hollywood Jockey Club. Mrs. Horning executed a mortgage to her grantor, in which she agreed to the lease with some alterations not material to Weed's contract, but these became immaterial, because on February 11, 1939, the lessee filed its petition in the United States District Court for the Southern District of Florida for appointment of a receiver and a re-

organization of its affairs. When the receiver was appointed all suits against the lessee was enjoined.

The bill alleges that on May 6, 1939, notice of lien was filed by Robert L. Weed, Architect, Inc., against the lands embraced in the leasehold estate. January 18, 1940, suit to foreclose said lien was instituted in which Mrs. Horning and others were named as defendants. The bill to foreclose alleged the assumption of jurisdiction in the bankruptcy proceeding by the Federal District Court, the claim of Robert L. Weed, Architect, Inc., and prayed for foreclosure of the lien and sale of the fee simple title of the leasehold, free and clear of any claim of defendants. On February 2, 1940, the Federal Court entered an order permitting Robert L. Weed, Architect, Inc., to amend its bill of complaint in the lien foreclosure suit by joining as defendants thereto all persons holding claims against or asserting any interest in the leasehold estate.

The order permitting the last named amendment enjoined all other proceedings in the cause. The amendment adding new defendants was made the following day, and notice of pendency of the foreclosure suit is alleged to have been filed in the manner and within the time required by law. The foreclosure suit stood in this condition till July 29, 1946, during which time the bankruptcy cause was proceeding in the Federal Court where appellant's claim was examined and approved. Several plans of reorganization were proposed and considered but the "Donn Plan" was accepted.

Pursuant to this proffer, trustees in bankruptcy, under court order, sold the assets of the leasehold estate of the Gulf Stream Park Racing Association. The bill of complaint alleges that the Gulf Stream Park Racing Association was formed by James Donn, author of the "Donn Plan" and Marie M. Horning for this purpose, that by virtue of said sale it became the successor in interest to Hollywood Jockey Club, Inc., Mrs. Horning and those persons listed in the schedule of claims attached to the Donn Plan. Immediately following the sale to Gulf Stream Park Racing Association, plaintiff called up defendants motion to dismiss the bill of complaint in the foreclosure suit, which, on consideration, was granted, and this appeal was prosecuted from that decree.

The parties are at variance as to what questions are presented to this Court for determination. We are convinced that the gist of appellant's case is embraced in the second amended bill of complaint. If it contains any equity, then the order of dismissal was error. It is contended by appellee that the order of dismissal should be affirmed because, (1) appellant was a corporation and being so, it was precluded by law from acquiring a lien on the leasehold estate. (2) Under the facts stated, there was no basis for a lien in favor of appellant, and (3) under paragraph 4 of the original lease, the lessee agreed not to impose any laborers or mechanics liens on the leasehold estate.

As to the first contention we find no support whatever. It is quite true that under the law a corporation cannot be licensed to practice architecture, but Robert L. Weed, Architect, Inc., was nothing more than the alter ego of Robert L. Weed or a medium through which his business as an architect was transacted. The bill of complaint alleges that Robert L. Weed was at all times a licensed architect, that as such he performed the services in question and that the contract was executed by Robert L. Weed, Architect, Inc., for the benefit of Robert L. Weed. Throughout the entire transaction both parties recognized Robert L. Weed as the main party in interest, and that Robert L. Weed, Architect, Inc. was nothing more than a nominal party to the transaction.

At the time the contract was executed, the law permitted corporations to employ certificated architects. Section 3571, Compiled General Laws of Florida. The present law, Section 467.08 F.S.A. 1941, does not carry this authorization, but we do not think it material. There is not the slightest suggestion here that appellees were deceived or suffered any injury by reason that Robert L. Weed, the real party complainant, was practicing under the name of Robert L. Weed, Architect, Inc.

We are also convinced that appellees second contention viz: under the facts stated, there is no basis for a lien in its favor, is without merit. This contention is predicated on the theory that appellant did not file the cautionary or such other notices as are required by Section 84.02 et seq., Florida Statutes 1941, and because the original lease contained a pro-

vision whereby the lessee agreed not to place any laborers or mechanics liens on the leashold estate.

To rebut the latter contention it is sufficient to say that the original lease provided for the improvements on the leasehold from which appellant's lien accrued, both parties knew they were essential to execute the purpose of the lease and both parties knew that they were the very gist of the lease. So far as this record discloses, both parties were present and witnessed them being placed on the leased lands. When that is the case, the lessor will not be heard to say that notice was not given. This is true because when the lease is read in sum one can draw no other conclusion than that both parties contemplated and knew that a contract for the improvements would be made. Appellant was not a party to the lease and since the statute gives him a lien, it would be ridiculous to hold that the parties to the lease can contract to defeat the law.

Now let us examine the question of notice and determine if appellant's alleged delinquency in this was such as to defeat his lien. It is not amiss to bear in mind that it is not denied that appellant performed the services in question, that he earned his fee, the amount of which is not challenged, that it was examined, approved and adjudicated in his favor in the bankruptcy proceedings, and that it is long past due and no part of it has been paid. When a litigant starts a law suit with all these elements in his favor, the law guarantees him a remedy when he is wronged, it must take something more than shadow boxing in a maze of legal abstractions to defeat his search for it. If this is not true, then ones pursuit of justice is about as tangible as chasing the mirage or pursuing that certain pot of gold at the end of the rainbow.

It is not disputed that when Broward Tomato Farms executed the leasehold to Hollywood Jockey Club, Inc., for a term of twenty years, it required the lessee to expend not less than $500,000, by January 1, 1939, in the construction of buildings and other equipment essential to the operation of a first class race track on the leased lands. Neither is it denied that appellant designed and superintended the construction of these

buildings, or that in January 1939, Marie M. Horning purchased the lands described in the lease with full knowledge of its provisions and the improvements made on the lands. The bill of complaint alleges that on May 6, 1939, appellant filed his claim of lien. It is not denied that on February 11, 1939, the lienor filed its petition in bankruptcy in the United States District Courts for the Southern District of Florida, that the leasehold estate was tied up in bankruptcy till July 1946, during which time appellant's claim was approved and adjudicated by the Federal District Court. When the bankruptcy proceeding was concluded the Gulf Stream Park Racing Association purchased the interest of Mrs. Horning and Hollywood Jockey Club, Inc., in the leasehold estate.

Under this state of facts when appellant constructed the improvements, the very terms of the lease gave him a lien on the leasehold estate and every party in each transaction, including appellee, was on notice of his lien. The statute creates the lien in favor of those who do the work or construct the Improvement and the bill of complaint alleges that the notice of lien was given. Under the facts in this case, it served no useful purpose. The cautionary notice provided by Section 84.04, Florida Statutes 1941, was not required in this case. It excepts laborers, regardless of by whom they are employed and those contracting shortly with the owner, from its provisions. The lessee in this case was to all intents and purposes the owner and was well within this exemption. Section 84.01, F.S.A. 1941.

Lien laws like that in question were designed to protect laborers and material men and should be liberally construed to accomplish that purpose. When the contract is made direct with the owner, or his agent, as in this case, neither the cautionary notice nor the record lien notice is necessary as prerequisite to enforce the lien. Hendry Lumber Co. v. Bryant, 138 Fla. 492, 189 So. 710. The rule appears to be general that when a lease requires the lessee to construct improvements on the leased premises, the lessee thus becomes the owner or the agent of the owner and there is no reason for the notice of the lien. Taylor v. Ferramen Properties, Inc.,

103 Fla. 960, 139 So. 149; Hart v. Reid, 243 Mich. 175, 219 N.W. 692; Jordan v. Natrona Lumber Co. 52 Wyo. 393, 75 P. (2nd) 378; Burkitt v. Harper, 79 N.Y. 273. 13 L.R.A. 707; Waring v. Bass, 76 Fla. 583, 80 So. 514.

It is hardly open to question that the fee successors to Broward Tomato Farms, Inc., Marie M. Horning and the lessee Hollywood Jockey Club, Inc., had knowledge of appellant's claim. Mrs. Horning in terms accepted it, and the lease was the primary asset bargained for and purchased by the Gulf Stream Park Racing Association, which agreed as part of its condition of purchase, to pay appellant's claim. When such facts are undisputed and it is shown that the claim was examined and approved by the Federal District Court, good authority holds that it is res judicata and that defendants are estopped to challenge its validity. Banks v. West Point Wholesale Grocery Co. 225 Ala. 74, 142 So. 49; Cromwell v. County of Sac 351, 24 L. ed. 195; Carr v. Varnes, 138 Mo. App. 264, 120 S.W. 705, 6 Am. Jur. 590.

It is accordingly our view that the second amended bill of complaint contained equity and that it was error to dismiss it. Equity is not an elusive thing like a flea in a wool sock. It is a thing of great value and reveals itself in many ways. True, as in this case, it sometimes gets gummed up in the litter of legal procedure and travels a devious course, but when that is brushed aside it is often as evident as a missing front tooth. When a lease contract in terms requires valuable improvements, that are the gist of the lease, and the parties to the lease witness them being made, they will not be heard to say that they can contract to prevent laborers and material men from securing a lien on the leasehold when the law in terms gives them. The cautionary notice was not required because the lessor was dealing directly with the owner or his agent and to have given it would have been a futile gesture.

The judgment appealed from is therefore reversed with directions to reinstate the bill and proceed accordingly.

Reversed with directions.

THOMAS, C. J., BUFORD and SEBRING, JJ., concur.