88 So.2d 511 (1956)
JAMES M. ANDERSON ET AL., APPELLANTS,
v.
MORRIS SOKOLIK AND FLORENCE SOKOLIK, HIS WIFE, APPELLEES.
Supreme Court of Florida, En Banc.
May 23, 1956.
Rehearing Denied July 19, 1956.
*512 Harry B. Smith, Miami Beach, Smathers, Thompson, Maxwell & Dyer, Feibelman & Friedman, Loftin, Anderson, Scott, McCarthy & Preston, Charles F. Zokvic, Fogle & Fordham and Frank C. Oldham, Miami, for appellants.
A.J. Kaplan, Miami Beach, for appellees.
TERRELL, Justice.
The gravamen of this suit is a 99-year lease, hereinafter referred to as the "lease". Morris Sokolik and Florence Sokolik, his wife, filed their complaint against Ocean Park Company, also known as Ocean Park Company, Inc., a Florida corporation; Ozac, Inc., a Florida corporation, R.W. Weeks & Son Plastering Contractors, Inc., a Florida corporation; Bristol Insulation Co., Inc., a Florida corporation; Tri-City Electric Company, Incorporated, a Florida corporation; Tilecraft, Inc., a Florida corporation; Isidore Greenfeder and Nat Fechtner, d/b/a Service Plumbing Company; Maule Industries, Inc., a Florida corporation; Reed Frame Company, a Florida corporation; James M. Anderson; Joseph Gersten; and Jacob Solomon and Yetta Solomon, his wife. The complaint prayed: (1) That defendant fee owners be enjoined without bond from proceeding further with a certain cause in the Civil Court of Record, Dade County, to secure possession of the premises therein described and that the court determine the rights of the parties; (2) that foreclosure and an accounting against Ocean Park Company and Ozac, Inc., be decreed, including a deficiency judgment against them if the mortgaged *513 premises do not sell for a sum sufficient to pay the claim of plaintiffs; (3) as to defendant Joseph Gersten, the prayer is for immediate restoration of the furniture described in the complaint or for full payment thereof or judgment for its removal, including a reasonable attorney's fee for legal services expended in the cause.
A brief factual recital would clarify the atmosphere. On April 26, 1951, the Solomons executed a 99-year lease to Ocean Park Company, a Florida corporation, which became indebted to Ozac, Inc., a Florida corporation, in a large sum as evidenced by promissory note secured by mortgage deed describing the 99-year lease; that the said note and mortgage deed were purchased by and were assigned to the plaintiffs (the Sokolics) and recorded in Mortgage Book 360 at page 220; that Ocean Park Company constructed a 30 room building on said property, 19 rooms of which were furnished and all of which were encumbered by the mortgage. The suit to foreclose the mortgage was precipitated because Ocean Park Company failed to meet the conditions of the mortgage in that it neglected to pay taxes as they became due; it failed to pay sums due for labor and materials furnished; it failed to pay owners of the fee, the lessors, the sums due as rentals on the leased property and prior to the institution of this suit, Jacob and Yetta Solomon, lessors and also owners of the fee, instituted eviction proceedings in the Civil Court of Record of Dade County to secure possession of the leased premises.
After filing the eviction proceeding to foreclose the lease, the lessors (the Solomons), being the fee simple owners, sold their interest to Royal Food Products, Inc., a corporation which was controlled by appellees. Royal Food Products, Inc., then substituted itself as a party plaintiff in the action pending in the Civil Court of Record of Dade County to secure possession of the leased premises, to cancel said 99-year lease for non-payment of rent and for other reasons. Royal Food Products, Inc., then had itself substituted in the instant cause as party defendant in place of the original lessors, the fee simple owners.
At final hearing, the chancellor decreed that the leasehold interest was devoid of value since the lessee had been lawfully evicted by court order and being so, the claims of the mortgagee and the mechanic lienors against the leasehold interest were worthless. The court further decreed that Royal Food Products, Inc., held title to the leased premises, free of any encumbrance account of the statutory laborers' and mechanics' liens sought to be foreclosed. James M. Anderson and other defendants named as appellants have appealed from the final decree so entered.
The effect of the final decree in the Circuit Court is to terminate the 99-year lease, and permit Royal Food Products, Inc., a corporation controlled by the Sokoliks, to acquire the property without satisfying the mechanics' liens imposed on it for constructing the 30 room building. The point for determination is whether or not under the circumstances this should be permitted.
The chancellor answered this question in the affirmative on the theory that the lease did not require the lessee to construct a building or buildings on the leased property and that there was complete absence of any showing of privity of contract between any of the lienors and the fee owners, and further that the allegations of fraud by the lienors against the plaintiffs and Royal Food Products, Inc., were not proven.
It may be that no specific provision of the lease requires the construction of a building on the leased premises. It is a 38 page instrument, however, and one cannot read and construe it as a whole without reaching the conclusion that when it was executed, the parties contemplated the construction of improvements on the leased premises.
Article IV(A) of the 99-year lease requires payment of all taxes "on the land and all buildings, fixtures and improvements now or hereafter thereon." Article V, among other things, provides, "irrespective of the fact that the lessee is obligated by the terms of this lease to cause improvements to be installed in or constructed upon the premises, nevertheless, *514 all persons with whom the lessee may deal, are put upon notice that the lessee has no power to subject the lessors' interest to any claim for mechanics' or materialmen's liens and all persons dealing with the lessee must look solely to the credit of the lessee and to the lessee's assets and not to the lessors or the lessors' assets."
Article VI inter alia provides that the "lessors shall have a first lien * * * on the buildings required to be placed upon the premises * * *." Article VII(A) provides that the "lessee covenants and agrees that it will, at all times, and at its own expense, keep all buildings and improvements, situated on the demised premises insured * * *." This section fixes the amount of insurance that must be carried. Articles VIII and IX deal with payment of fire and windstorm insurance premiums. Article XI entitled "Lessee's Obligation to Build" uses the term "may" in reference to any building the lessee may propose to erect but requires that they be placed in accordance with approved plans and specifications, and that such improvements become a part of the realty whether by default or by ordinary lapse of time. Article XIV entitled "Default" has to do with failure to build or rebuild as provided and subjects the lease to forfeiture, including buildings and improvements thereon. Article XXII fixes time and conditions of lessee's option to purchase and Article XXIII is pertinent because it fixes the form of notice to be given not only before building is commenced but after building is completed as well and shows that the parties contemplated the construction of buildings or improvements on the leased premises.
Despite the ruling of the chancellor that there was no specific provision of the lease requiring construction of improvements on the leased premises, we think the foregoing and other provisions of the lease show conclusively that both parties contemplated that buildings or other improvements would be constructed according to plans and specifications to be approved and that they were in fact placed on the premises. It is perfectly obvious that both parties knew that the improvements were the pith of the lease and except for them the lease would not have been executed. They were essential to the purpose of the lease and when the lessee contracted for them, he did so "in accordance with a contract" with the lessors whose interest in the property was then subject to the mechanics' and materialmen's liens.
The governing statute is F.S. § 84.03(2), F.S.A., as follows:
"Except as provided in §§ 84.12 and 84.13, such liens shall extend to, and only to, the owner's right, title or interest existing at the time of the visible commencement of operations or thereafter acquired in the real property (not exceeding forty acres of land). When an improvement is made by a lessee, in accordance with a contract between such lessee and his lessor, liens shall extend also to the interest of such lessor. If any part of the real property subject to such liens be removed before the discharge thereof, such removal shall not affect the rights of lienors in respect to either the remaining real property or the part so removed."
In Robert L. Weed, Architect, Inc., v. Horning, 159 Fla. 847, 33 So.2d 648, this court considered various provisions of F.S. Chapter 84, F.S.A., relating to mechanics' liens and held inter alia that said act should be liberally construed to protect laborers and materialmen. This is true whether the obligation to build is express or implied. In either event, the lease attaches to the interest of the lessor fee simple owner. Any other interpretation would make it possible for lessors and lessees to evade the mechanics' lien law and defeat the claims of laborers and mechanics. It would be an open invitation to set at naught the mechanics' lien law and leave the laborer and mechanic without protection. Appellants were materialmen and contractors who had furnished labor and material. They were not parties to the lease agreement consequently questions as to terms of the lease should be *515 resolved in their favor. Cf. New York Life Ins. Co. v. Kincaid, 136 Fla. 120, 186 So. 675.
The words in the statute quoted above  "when an improvement is made by a lessee, in accordance with a contract between such lessee and his lessor, liens shall extend also to the interest of such lessor"  amply cover the contract we are confronted with in this case. Lehigh Structural Steel Co. v. Joseph Langner, Inc., Fla. 1949, 43 So.2d 335, and Masterbilt Corporation v. S.A. Ryan Motors, Inc., 149 Fla. 644, 6 So.2d 818. There was never a case in which the doctrine of the statutory lien could be more appropriately invoked than here. In F.S. Chapter 84, F.S.A., the legislature placed every safeguard possible about the economic security of the laborer and the mechanic. It was designed to cut off every defense to payment and provided summary process to convert his labor or material into bread and raiment when the owner of the improved lands fails to do so. No court should invoke what may be termed the process of judicial alchemy to transmute the bread and raiment of the laborer and materialman into stones and by the same token transform it into gold for the lessors.
The provision in Article V, quoted in the forepart of this opinion, wherein it is attempted to strip the appellees of power to subject the lessors' interest to any claim for mechanics' lien is in effect an attempt to repeal or set aside F.S. Chapter 84, F.S.A., as applied to this contract and is without force or binding power. One cannot by contract read the clear intent of the legislature out of the books, neither can he, in the manner shown, contract the coat off the back of him who furnishes labor or material to improve his premises. Robert L. Weed Architect, Inc., v. Horning, supra. In historical setting, the very purpose of equity and the statutory mechanics' lien was to prevent hardships like that pointed out in this case.
It follows that the chancellor committed error in finding that the liens of appellants did not attach to the interest of appellees, so his judgment is reversed.
Reversed.
THOMAS and HOBSON, JJ., and FLOYD, Associate Justice, concur.
DREW, C.J., and THORNAL and SEBRING, JJ., dissent.
DREW, Chief Justice (dissenting).
I respectfully dissent from the majority opinion in this case because of my firm belief that the result reached in the majority opinion not only does violence to the law, but also results in substantial injustice to the owners of the title to the land involved.
The circuit court held that the liens of appellant Anderson and others sought to be foreclosed by cross bill did not constitute valid liens against the fee simple title of Royal Food Products, Inc. As a basis for its decision on this question, the circuit court found that the lease in question did not require the lessee to construct any building on the premises, that no privity of contract ever existed between any of the lienors and the owner of the fee simple title, and that the allegations of fraud made by the lienors against the Sokoliks and Royal Food Products were not proven. The correctness of the lower court's finding concerning the allegations of fraud are not questioned on this appeal and the views hereafter expressed are predicated on the premise that no fraud existed.
The sole question raised here concerns Chapter 84, F.S. 1953, F.S.A., The Mechanics' Lien Law, as applied to the ninety-nine year lease between the leasing parties in this case. The part of this statute relevant to the question presented is this sentence in Paragraph 84.03(2) F.S. 1953, F.S.A., "When an improvement is made by a lessee, in accordance with a contract between such lessee and his lessor, liens shall *516 extend also to the interest of such lessor."[1]
There is no contention here by the appellants or anyone else that the ninety-nine year lease involved in this litigation contains any provision which requires the lessee to construct a building. On the contrary, appellants argue "It is apparent from a reading of the lease that the parties contemplated and intended a substantial and permanent improvement to be made within the purview of Florida Statute 84.03(2) [F.S.A.]." (Emphasis added.)
The case involves a ninety-nine year lease of real estate. Quite obviously, a person leasing a piece of vacant property for a period of ninety-nine years would ordinarily anticipate that his lessee would construct a building or buildings thereon at some time within the term. It would do no violence to the logical process of reasoning to assume that the lessee likewise intended at some time in the future that buildings would be erected thereon. And it is perfectly logical to assume that a careful draftsman of such a lease would insert suitable provisions to take care of such an eventuality when and if it occurred. As I view the lease here in question, the language used is employed solely with reference to a building which may some time in the future be erected. There is no mention in the lease, nor elsewhere in the record, of the size or kind of building to be erected, not the cost thereof nor is there the first word in the lease which in any way obligates the lessee to build any structure whatever on the premises.
The plain language of that portion of the statute quoted above requires a contract between the lessor and the lessee to make an improvement which would give rise to a mechanic's lien. A contract is an agreement enforceable at law between two or more parties for the doing or not doing of some specific thing; a contract must create legal obligations. 1 Bouv. Law Dict., Rawle's Third Revision, p. 658; 17 C.J.S., Contracts, § 1, p. 310. See also paragraph 84.01, F.S. 1953, F.S.A., "Definitions".
The manifest purpose of this specific provision of the statute is to limit the extent and the conditions under which liens may attach to the lessor's real property through acts of another so that the lessor at the time of the contract may determine, delineate, prescribe and limit the risk involved; and, if he so desires, take steps to protect his property against such liens by performance bonds, indemnity bonds or otherwise. The statute says that the improvements made by a lessee must be made "in accordance with a contract between such lessee and his lessor." The words "in accordance with" have the same meaning as "agreeable to", "consonant with", "in conformity with" and words of similar import. In those instances where the lessee has contracted with the lessor to construct an improvement on the lessor's land, to the extent of the reasonable cost thereof, the statute in effect makes the lessee the agent of the lessor and provides that those who furnish labor and material in the construction of the improvement may look to the land as security. The statute does not contemplate a random scatter gun approach to the problem nor does it impose absolute liability upon the lessor for any improvements, in any amount, at any time placed on the land by a lessee. To countenance such a proposition *517 could well result in the statute becoming an instrument of oppression.
Contemplating the construction of an improvement and contracting for such improvement are entirely different things. To adopt the construction of the majority is tantamount to holding that if a lessor executes a long term lease on vacant land, he can not anticipate that buildings may be some time constructed thereon and protect his fee simple interest with respect thereto without bringing himself within the provisions of the statute and subjecting his fee simple title to mechanics' liens which might be incurred in the construction of a building for any amount that the lessee may thereafter determine to erect.
In the recent case of Brenner v. Smullian, Fla. 1956, 84 So.2d 44, 46, in discussing this same provision of our statutes, we stated that such section "has been construed by this court to make the lessor's interest in the property liable for any construction work done by the lessee only if the lease agreement required the lessee to make the alterations or to effect the improvements involved. An acquiescence on the part of the lessor to the improvements does not render the interest of the lessor liable but affects only the interest of the lessee in the premises." In the Brenner case the original lease did not require or authorize the lessee to alter the premises, but by subsequent agreements between the original lessor and the lessee, such improvements were not only authorized but the details and the extent thereof were agreed upon between the lessor and the lessee. In that case we said:
"We are of the opinion that under the amended lease and the testimony produced in the record that the decision of the lower court in construing the original agreement, the new agreement, and other contracts herein, requiring the sub-lessee to complete the contracts was correct."
Clearly under such circumstances the statute came into operation and we so held.
On the same general subject of whether the statute requires a contract, we said in Robert L. Weed, Architect, Inc., v. Horning, 1947, 159 Fla. 847, 33 So.2d 648, 651:
"The rule appears to be general that when a lease requires the lessee to construct improvements on the leased premises, the lessee thus becomes the owner or the agent of the owner and there is no reason for the notice of the lien. Taylor v. Ferroman Properties, Inc., 103 Fla. 960, 139 So. 149; Hart v. Reid, 243 Mich. 175, 219 N.W. 692, 220 N.W. 717; Jordan v. Natrona Lumber Co., 52 Wyo. 393, 75 P.2d 378; Burkitt v. Harper, 79 N.Y. 273; Burkett v. Griffith, 90 Cal. 532, 27 P. 527, 13 L.R.A. 707, 25 Am.St.Rep. 151; Waring v. Bass, 76 Fla. 583, 80 So. 514.
* * * * * *
"* * * When a lease contract in terms requires valuable improvements, that are the gist of the lease, and the parties to the lease witness them being made, they will not be heard to say that they can contract to prevent laborers and material men from securing a lien on the leasehold which the law in terms gives them. * * *" (Emphasis supplied.)
Moreover, in the earlier case of Masterbilt Corporation v. S.A. Ryan Motors, Inc., 1942, 149 Fla. 644, 6 So.2d 818, 820, on the same subject we held:
"The owner's consent for alterations of the building so that the same could be used as a restaurant was first to be obtained in writing as a prerequisite. The owner simply examined the plans and specifications as prepared by the architect and granted its formal approval. The consent of the owner for the improvements according to the plans did not confer on or grant to the Masterbilt Corporation the authority to do the work. In fact it nowhere appears that the owner of the property, or its lessee, knew or had negotiations with it in any manner incident to the alterations. If the owner was to obligate its property *518 to the lien of the act, certainly some instrument in writing should have been prepared and signed. * * *" (Emphasis supplied.)
See also the case of Stowers v. Wheat, 5 Cir., 1935, 78 F.2d 25, for an interesting discussion of this question. While it is to be observed that the present statute is different from the statute in effect at that time, the reasoning in the Stowers case follows generally the pattern which this Court has consistently followed in the later cases.
The majority urges that the concepts of natural justice and equity require that the liens involved herein be extended to the interest of the lessors because the labor and material of the lienors was incorporated in the building which now belongs to the lessors and amounts to an unjust enrichment of them. The answer to this contention is that the situation in which these lienors find themselves is of their own making. They knew they were not dealing with the owner of the fee. A simple examination of the records would have advised them that the lease contained no provision requiring the lessee to construct the building then under construction or any other building. It cannot be said that the lienors were in any way misled by the owners of the fee but, on the contrary, the lower court expressly found, and appellants admit, that there was no such misrepresentation or fraud. It was simply a case of proceeding without taking proper steps to protect their interest which results in the situation in which they now find themselves involved. Many years ago this Court, speaking through Justice Ellis, in the case of Sikes v. Dade Lumber Co., 98 Fla. 451, 123 So. 918, at page 919, in a somewhat similar situation and concerning a similar argument made by the writer of this opinion, observed:
"The general observations of counsel for appellants in the latter part of their brief upon the word `justice,' and what it means as applied to a cause in equity, are pretty enough as generalizations, but scientific administration of justice can never be accomplished in disregard of rules of procedure which have for their purpose a clear and definite presentation of an issue of law or fact. `Justice,' as the term is understood and applied in the courts to the transaction of business among men, is governed by rules of conduct and legal procedure to which those who seek it must conform to the end that the elements of which it consists in the particular case may be clearly stated, and not left to brilliant generalities which at any material point in the controversy may be as elusive as the iridescence of an autumn sunset."
I would affirm.
THORNAL, J., concurs.
NOTES
[1] The National Conference of Commissioners on Uniform State Laws and Proceedings originally drafted the language of the Florida Mechanics' Lien Law and it was adopted with only minor revision. The particular sentence under discussion here was adopted in the exact language of the original uniform law. The footnote explaining the use of the sentence states: "It is equitable that the property of a lessor who has, by contract, required a lessee to improve it should be subject to lien. It is no hardship since he is thoroughly aware of the improvement." (Emphasis supplied.) P. 617, footnote 32, Handbook of the National Conference of Commissioners on Uniform State Law and Proceedings, 1930.