111 So.2d 707 (1959)
TOM JOYCE REALTY CORP., an Indiana corporation, Appellant,
v.
H. POPKIN, d/b/a Herman Popkin & Son, a/k/a Herman Popkin d/b/a H. Popkin & Son, Appellees.
No. 58-558.
District Court of Appeal of Florida. Third District.
May 5, 1959.
Rehearing Denied May 29, 1959.
*708 Hoffman, Kemper & Johnson, Miami, for appellant.
Saul Genet, Eli Breger and Louis Schwarzkopf, Miami Beach, for appellees.
DREW E. HARRIS, Associate Judge.
This appeal is from a final decree foreclosing a mechanic's lien in favor of the contractor for work done on the subject premises for a lessee.[1] The controversy turns principally on the construction of Section 84.03, Florida Statutes 1957, F.S.A., which has been the subject of numerous decisions of the Supreme Court.
A clear understanding of the issues involved here requires a description of the parties and their respective interests in the litigation. Walter A. Rollert and Harriet H. Rollert were the fee simple owners of the real estate on which the improvements were made. Tom Joyce Realty Corp. was the lessee in a ninety-nine year lease from the Rollerts. Some years prior to the commencement of this litigation it had constructed a substantial building on the property. Skaf Auction Galleries, Inc. was the sub-lessee in a lease from Tom Joyce Realty Corp. as lessor of said building, said sub-lease being for a period of five years for a total rent of $90,000. H. Popkin & Son was the general contractor who, shortly after the sub-lease was executed, entered into a contract with the lessee to make certain improvements and alterations to the then existing store building for the sum of $8,000 with provision for additional or extra work on a basis set forth in the written contract. Walter E. Rollert and Harriet H. Rollert, the fee simple owners, were dismissed as parties at the final hearing and are not parties to this appeal. The lien was foreclosed against the ninety-nine year leasehold interest.[2] In the discussion of *709 this case which follows and for the sake of clarity we will refer to Tom Joyce Realty Corp., the lessee of the ninety-nine year lease, as the owner; Skaf Auction Galleries, Inc., the lessee in the five year sub-lease from Tom Joyce Realty Corp., as the lessee; and H. Popkin & Son, the general contractor, as the contractor.
The five year lease[3] contained a provision that the lessee would make no alterations or improvements to the premises during the term of the lease without the written consent of the lessor, which consent should not be unreasonably withheld. The owner testified that, at the time he entered into the lease, there was no discussion of any proposed or contemplated improvements or alterations and that in fact he had no knowledge that any such improvements or alterations were contemplated or planned by the lessee. It is not contended by any of the parties that such improvements were made "in accordance with a contract between such lessee and his lessor." The lessee testified that at the time he entered into the lease he did not discuss any specific improvements with his lessor and, as a matter of fact, had no specific improvements in mind at the time.[4] The most that is claimed by the contractor either in the complaint or in the evidence is that at the beginning of the work, he was told by his attorney what he should do before the commencement of the work. He said he did not know when he commenced work who owned the property but his lawyer told him it was all right to proceed with it. No cautionary notice was ever given the owner by the contractor and it is insisted none was necessary. The claim of the contractor is based upon the simple proposition that the owner discovered the work was being performed; that he did not object to the work and is, therefore, estopped to deny that the contractor who incorporated his time, labor, money and materials therein should have a lien on the premises.[5]
The trial court made no specific findings of fact. We are, therefore, unable to say what conclusion he reached with reference to the disputed testimony relating to notice to the owner. Tom Joyce, the president of the owner corporation, denied that he knew the work was going on. Skaf, his lessee, testified unequivocally that he never advised the owner nor did he ever see the owner around the premises during the completion of the work. The chancellor must have agreed with the theory advanced by the contractor implicit in which, of course, was the proposition that the owner knew the work was going on and, because he took no steps to prevent it, his ninety-nine year *710 lease was subjected to the lien of the contractor.
The Mechanic's Lien Law provides "such liens shall extend to, and only to, the owner's right, title or interest existing at the time of the visible commencement of operations or thereafter acquired in the real property * * *. When an improvement is made by a lessee, in accordance with a contract between such lessee and his lessor, liens shall extend also to the interest of such lessor."[6] In Brenner v. Smullian,[7] the Supreme Court had before it a question arising under this section of the law. In that case the Supreme Court said that this section of the mechanic's lien law subjected an owner's interests in lands to the lien only if the lease agreement required the lessee to make the alteration or to effect the improvements involved. In that case it was stated "An acquiescence on the part of the lessor to the improvements does not render the interest of the lessor liable but affects only the interest of the lessee in the premises." (Emphasis added.) Moreover, in that case the Supreme Court referred to the Masterbilt Corporation case,[8] decided many years prior thereto, holding that an authorization by a lessor to a lessee to remodel leased premises in accordance with plans prepared by an architect was insufficient to establish a lien in favor of a contractor which contracted with sub-lessee for the remodeling, where it appeared that neither the lessor nor lessee had agreed to such remodeling or granted the contractor authority to do the work and it was not shown that either lessor or lessee knew or had negotiations with the contractor incident to the alterations. The quoted language from Brenner v. Smullian would be squarely decisive of the basic contention here were it not for uncertainties created by certain language in the later case of Anderson v. Sokolik.[9]
We construe the majority opinion in Anderson v. Sokolik as not in conflict with Brenner v. Smullian or the Masterbilt Corporation case. We think the holding of the Supreme Court in Anderson v. Sokolik is based upon that portion of the opinion concerning the long-term lease involved therein, viz.:
"* * * It is perfectly obvious that both parties knew that the improvements were the pith of the lease and except for them the lease would not have been executed. They were essential to the purpose of the lease and when the lessee contracted for them, he did so `in accordance with a contract' with the lessors whose interest in the property was then subject to the mechanics' and materialmen's liens." (Emphasis added.) [88 So.2d 514.]
As thus construed, we see no conflict between Anderson v. Sokolik and the previous Masterbilt and Brenner cases; as so construed, it carries out precisely the meaning of the statute which we have quoted and is in accord with other decisions of that Court before and after that opinion. Much comfort is taken by the contractor from certain language in the opinion which we construe to be obiter. For instance:
"* * * It was designed to cut off every defense to payment and provided summary process to convert his labor or material into bread and raiment when the owner of the improved lands fails to do so. No court should invoke what may be termed the process of judicial alchemy to transmute the bread and raiment of the laborer and materialman into stones and by the same token transform it into gold for the lessors."
This language, when construed with the conclusion of the majority opinion that the *711 work which afforded the basis of the lien was "in accordance with a contract," is certainly not subject to objection. But the Supreme Court, we are sure, in the use of such language had reference to those instances where the lienor had brought himself within the provision of the Mechanic's Lien Law; this is a fundamental premise because on numerous occasions that Court has recognized the elemental principle that such liens are creatures of statute and that the protection of a statute is afforded only to those who comply with its provisions.[10] Moreover in the Richards case[11] the same Justice who wrote for the majority in the Anderson case rejected the idea advanced to support the contractor's thesis when he said "The Mechanics' Lien Law is in apposition with the theory of subrogation. We do not adhere to the lien law as grounded on implied agency, ratification or quantum meruit followed in approximately 20 states." (Emphasis supplied.) Insofar, therefore, as Anderson v. Sokolik is concerned, we conclude that it did not depart from the principle so well established in Brenner v. Smullian and other cases that in order for a mechanic's lien to arise out of a contract with a lessee, the work must have been performed and the improvements made in accordance with a contract between such lessee and his lessor. As pointed out in the previous cases on the question, such contract need not be incorporated in the previous lease itself but may be the subject of subsequent negotiations and agreements between the parties and may be oral as well as written. If our conclusion with respect to the holding in Anderson v. Sokolik is incorrect, (and we do not think it is) then our opinion and judgment in this case are necessarily in direct conflict therewith.
La Pan v. Cascade Enterprises, Inc.,[12] a case decided by the Supreme Court some time after Anderson v. Sokolik, sheds some light upon what was intended to be held in the latter case and supports our conclusion here. In the La Pan case the opinion of Mr. Justice Thomas stated that upon the consideration of the lease there involved as a whole, the Court reached the conclusion that the work the appellant was employed to do amounted to "`an improvement * * * made by [the] lessee, in accordance with [the] contract between such lessee and his lessor,' and that consequently the lien of appellant extended also `to the interest of such lessor.'" (Emphasis added.) It is true in that case that, on rehearing granted, the original opinion was vacated. The reason for vacating the opinion, however, did not conflict with the quoted holding. The cause was sent back to the trial court to take testimony on the issues presented by the complaint and answer including but not limited to the question of agency.
The decisions of the Supreme Court of this State have uniformly held that for a contractor to be entitled to a lien on the improved realty as against the owner when the work is done for a lessee, it must be made to appear that the original lease by its terms required the work to be done or the lease by its terms made it obvious that the improvements were the pith of the lease.[13] We do not find any decision holding that an owner or lessor subjects his property to a mechanic's lien for work done by a contractor for a lessee merely because he knows such work is taking place and fails to take action to stop such work. Moreover, the intent and letter of the statute is opposed to such a holding. The Supreme Court has said on other occasions, and we echo it and emphasize it here, that a contractor, laborer or materialman may receive full, adequate and complete protection at all *712 times if he will but take the trouble to comply with the provisions of the mechanic's lien law which creates the lien in his favor in the first instance.[14]
The decree appealed from is reversed for further proceedings.
HORTON, Acting Chief Judge, and PEARSON, J., concur.
NOTES
[1] The decree ordered the clerk to sell the ninety-nine-year lease to satisfy the lien. The decree made no reference to the five-year lease of the lessee for whom the work was done although the amended complaint prayed for relief as to the fee owner, the ninety-nine year lessee and the five year lessee.
[2] Section 84.01, Florida Statutes 1957, F.S.A., reads, in part:

"`Owner' means the owner of real property or any interest therein who enters into a contract for the improvement of such real property and who may be the owner in fee of the real property, or of a lesser estate therein, a lessee for a term of years therein, a person having any right, title or interest in the real property which may be sold under legal process, or a vendee in possession under a contract for the purchase of the real property or any such right, title or interest therein."
[3] The description of the leased property in the lease was:

Lot 6 in Block 6 of Second Ocean Front Subdivision according to the Plat recorded in Plat Book 28 at page 28 of the Public Records of Dade County, Florida:
Also described as
Store building described as XXXX-XX-XX Collins Avenue, and Warehouse in rear, at 6756 Collins Avenue, Miami Beach, Dade County, Florida.
[4] In answer to a question as to whether he (the lessee) had advised the owner when he signed the lease as to any plans to improve the premises, the lessee said "no, I had no idea what I was going to do at the time I signed the lease  no knowledge whatever."
[5] The contractor, in his brief, states:

"We contend and submit that the whole picture presents a typical case of estoppel, for certainly it would be unjust to permit an owner to consent to and stand by quietly while his property was being enhanced and then permit him to keep the fruits of someone else's labor through a technical requirement known only to him and which could be exercised solely by him."
[6] Sec. 84.03, Florida Statutes 1957, F.S.A.
[7] Fla. 1956, 84 So.2d 44, 46.
[8] Masterbilt Corporation v. S.A. Ryan Motors, Inc. of Miami, 149 Fla. 644, 6 So.2d 818.
[9] Fla. 1956, 88 So.2d 511.
[10] Curtiss-Bright Ranch Co. v. Selden Cypress Door Co., 91 Fla. 354, 107 So. 679; Shaw v. Del-Mar Cabinet Co., Inc., Fla. 1953, 63 So.2d 264; Sheffield-Briggs Steel Products, Inc. v. Ace Concrete Service Co., Inc., Fla. 1953, 63 So.2d 924.
[11] The Richard Store Company v. Florida Bridge & Iron, Inc., Fla. 1954, 77 So.2d 632, 635.
[12] Fla. 1957, 94 So.2d 178, 180.
[13] Also compare Dills v. Tomoka Land Company, Fla.App. 1959, 108 So.2d 896.
[14] See Shaw v. Del-Mar Cabinet Co., Inc., supra (Footnote 10).