RASA ENGINEERING CORPORATION, demandante y recurrente, *v.* HORACIO DAUBÓN, VASCO DAUBÓN y JOSÉ A. FRANCESCHINI, demandados y recurridos.

*Número:* 227    *Resuelto:* 9 de octubre de 1962

*Julio Suárez Garriga,* abogado de la recurrente; *L. E. Dubón, A. Torres Braschi* y *R. Ruiz Sánchez,* abogados de José A. Franceschini.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

Se alega en la demanda de este caso que los recurridos Horacio y Vasco Daubón y José A. Franceschini contrataron los servicios de la corporación recurrente, Rasa Engineering Corporation, para preparar un proyecto preliminar para la construcción de un edificio en un solar del recurrido Horacio Vasco Daubón, en la Avenida Ponce de León 1252 de Santurce, San Juan, Puerto Rico, y le encargaron las gestiones para la aprobación de dicho proyecto preliminar ante la Junta de Planificación y demás organizaciones gubernamentales; que la recurrente preparó dicho proyecto preliminar y obtuvo la referida aprobación en Septiembre 3, 1958. Se alega además que los recurridos contrataron los servicios de la recurrente para confeccionar los planos definitivos del proyecto de construcción de un edificio en el mencionado solar y la recurrente trabajó en la preparación de tales planos hasta Octubre 7 de 1958 cuando el recurrido Horacio Daubón, a nombre de los demás recurridos, le informó a la recurrente que descontinuara el trabajo; que los servicios así prestados valen justa y razonablemente la suma

de $29,317.00, que no le ha sido satisfecha por los recurridos a la recurrente a pesar de sus gestiones de cobro de dicha cantidad.

Se presentó una moción de desestimación de la referida demanda alegando que no aduce hechos suficientes para constituir una causa de acción en contra del recurrido José A. Franceschini y a favor de la recurrente.

La corte de instancia dictó sentencia desestimando la demanda en este caso por no ser la misma susceptible de enmiendas dictaminando que, siendo ilegal el ejercicio de la ingeniería o la arquitectura por parte de la corporación recurrente, también lo es el contrato en que ésta basó su reclamación, no estando los recurridos impedidos por excepción de oponer a la reclamación dicha ilegalidad, por ser el contrato contrario a la política pública.

En su recurso ante este Tribunal alega la recurrente como error que la sentencia dictada no procede porque de acuerdo con la Ley General de Corporaciones vigente en Puerto Rico se cambió la política pública en el sentido de permitir a las corporaciones realizar todos los actos, por sí y por sus funcionarios y empleados, que sean necesarios para los fines para los cuales fueron creadas y otorgarle libertad de conducir sus negocios como una persona natural.

La recurrente señala que de acuerdo con los artículos 206 y 1205 de la Ley General de Corporaciones, 14 L.P.R.A. secs. 1206 y 2205, vigente en Puerto Rico, no se puede invocar la ausencia de poder corporativo excepto por el Estado Libre, cualquier agencia o instrumentalidad de ésta o por sus accionistas, en determinados casos, ni puede una corporación alegar o mantener como defensa su falta de organización conforme a derecho, ni a quien se demande por daños a la propiedad se le permitirá alegar o mantener como defensa tal falta de organización conforme a derecho. Arguye la recurrente que estas disposiciones han establecido la política del Estado Libre de permitir a las corporaciones rea-

lizar todos los actos que sean necesarios en relación con los fines para los cuales la corporación es creada y otorgarle libertad de conducir su negocio como si el mismo fuese poseido y dirigido por un individuo. Por último, sostiène la recurrente que la sentencia en este caso de hecho cancela el certificado de incorporación de la recurrente en violación del artículo 1010 de la referida ley, 14 L.P.R.A. sec. 2010, que fija el procedimiento para cancelar dicho certificado, procedimiento que alega no se ha seguido en este caso. ■

De acuerdo con el artículo 1 de la Ley Núm. 399 de 10 de mayo de 1951, 20 L.P.R.A. sec. 681, creadora de la Junta Examinadora de Ingenieros, Arquitectos y Agrimensores, es ilegal para cualquier persona el practicar u ofrecer practicar en Puerto Rico tales profesiones a menos que la persona esté matriculada como tal profesional de acuerdo con las disposiciones de dicha ley. Esta ley sólo puede referirse a individuos, pues sus requisitos de preparación académica y examen ante la Junta, y registro, certificación y colegiación sólo pueden cumplirse por personas naturales. De manera que aunque se arguya que el vocablo *persona* usado en dicha ley incluye las corporaciones, éstas nunca podrían cumplir con los requisitos prescritos por la ley en cuestión de gestionar y obtener la certificación correspondiente y su colegiación. *T. V. Engineers, Inc.* v. *District of Columbia*, 166 A.2d 920 (D.C. 1961); *Potomac Engineers, Inc.* v. *Walser*, 127 F. Supp. 41 (D.C. 1954).

El artículo 101 de la Ley General de Corporaciones excluye de los amplios propósitos corporativos *"aquellos propósitos excluidos de sus alcances como resultado de alguna disposición legal vigente."* (14 L.P.R.A. sec. 1101.) (Énfasis puesto.) ■

Es forzoso concluir, a la luz de las disposiciones estatutarias citadas, que las corporaciones no pueden ejercer las profesiones de ingeniería, arquitectura y agrimensura en Puerto Rico, y que el hacerlo por tal persona no matriculada

de acuerdo a la ley, que no haya obtenido la certificación correspondiente y que no sea miembro del Colegio de Ingenieros, Arquitectos y Agrimensores, es un acto ilegal que constituye un delito menos grave (14 L.P.R.A. sec. 710). *Johnson-Olmstead Realty Co.* v. *City and County of Denver*, 1 P.2d 928 (Colo. 1931), revocado por otras razones en *McNichols* v. *City and County of Denver*, 274 P.2d 317 (Colo. 1954); 56 A.L.R.2d 726. ■

El artículo 206 de la Ley General de Corporaciones, supra, que señala la recurrente impide invocar la ausencia de poder corporativo en determinados casos, pero tal disposición necesariamente está limitada a poderes que una corporación no está impedida por ley de ejercer. El propósito tanto de esta disposición como del artículo 1205 de dicha ley es sólo limitar sustancialmente la doctrina de *ultra vires* y nada tienen que ver con actuaciones contrarias al derecho, las cuales, como se informa en esta opinión, constituyen "propósitos excluidos" según el artículo 101 de la citada ley. Los servicios contratados en este caso son "propósitos excluidos", constituyen facultades que una corporación no puede ejercer legalmente, y por lo tanto, son actos que no caen dentro del ámbito de la protección del referido artículo 206. El artículo 1205 de la citada ley tampoco es de aplicación en forma alguna pues no se trata en este caso de una mera falta de organización de la recurrente sino de ésta atribuirse "propósitos excluidos de sus alcances" en vista de las disposiciones de la ley que regula la práctica de las profesiones de ingenieros, arquitectos y agrimensores antes citada.(¹)

---

(¹) (a) En el caso de *Buscaglia, Tes.* v. *Tribunal de Contribuciones de Puerto Rico*, 65 D.P.R. 9 (1945) se resolvió que dos abogados admitidos al ejercicio de la profesión podían ejercerla a través de una sociedad compuesta por ellos aunque ésta es una persona independiente de los miembros que la componen. Contrario a lo que ocurre en el caso de una corporación profesional que puede componerse de un número indeterminado de accionistas y con respecto a la cual no existe autorización expresa alguna en Puerto Rico, el artículo 1569 del Código Civil, 31 L.P.R.A. sec. 4324 expresamente autoriza la creación de sociedades pro-

*Emerson* v. *Labor Investment Corporation,* 284 F.2d 946 (C.C.A. 10, 1960) ; *Potomac Engineers Inc.* v. *Walser,* 127 F. Supp. 41 (D.C. 1954) ; *Terwilliger* v. *Graceland Memorial Park Ass'n,* 173 A.2d 33 (N. J. 1961) ; *Community Credit Union* v. *Connors,* 105 A.2d 772, 774 (Conn. 1954) ; *Mitchell* v. *Hart,* 25 N.E.2d 665 (.Ind. 1940) ; *Mercury Life and Health Company* v. *Hughes,* 271 S.W.2d 842 (Tex. 1954) ; *United Order of Good Samaritans* v. *Meekins,* 244 S.W. 439 (Ark. 1922) ; 27 Colum. L. Rev. 594 (1927).

Siendo la prestación de los servicios en cuestión un acto ilegal en violación de un estatuto que se aprueba y se pone en vigor "a los fines de proteger la vida, la salud, y la propiedad y para fomentar el bienestar público", 20 L.P.R.A. sec. 681, ¿pueden los recurridos beneficiarse de los servicios que les ha prestado la recurrente sin obligación de pagar el valor razonable de los mismos? ▮

En el caso de *Pagán* v. *Padilla,* 42 D.P.R. 968 (1931), este Tribunal citó la doctrina de que "cuando un contrato es nulo por ser contrario a la política pública, una persona que ha aceptado un beneficio bajo el mismo no estará impedida de defenderse de dicho contrato al tratarse de poner en vigor contra ella".(2)  *Ruiz* v. *Méndez,* 86 F. Supp. 29 (P.R. 1949). Esta doctrina se aplica generalmente en los casos de ejercicio ilegal de una profesión. *F. F. Bollinger Co.* v. *Widman Brewing Corporation,* 14 A.2d 81 (Pa. 1940) ; *Báez* v. *Tippett,* 92 P.2d 1028 (Cal. 1939) ; *American Store*

fesionales, pero los miembros que la compongan sólo pueden ser profesionales debidamente admitidos al ejercicio de la profesión.

(b) En 14 Bus. Law. 969 (1959) se hace un resumen de la legislación y jurisprudencia sobre corporaciones profesionales así como de las ventajas de y de los argumentos en oposición a, la práctica de la ingeniería en forma corporativa.

(2) *Sanquírico* v. *De la Cruz,* 40 D.P.R. 202, 205 (1929), en que se resolvió que quien a sabiendas que el demandante no tenía título, utilizó sus servicios en ingeniería civil, no tiene una lícita defensa en la alegación de la falta de ese título, es distinguible, ya que en la fecha en que se resolvió, la referida profesión podía ejercerse libremente sin requisito de examen, licencia ni matrícula, contrario a la situación que impera en la actualidad bajo la ley reguladora de la profesión en cuestión.

*Equipment and Construction Corp.* v. *Jack Dempsey's Punch Bowl, Inc.,* 21 N.Y.S.2d 117 (N.Y. 1939), conf. 28 N.E.2d 23; 6 A Corbin, *Contracts, Section* 1512 *and* 1513; 82 A.L.R.2d 10.

En el caso de *Cardona* v. *Corte,* 62 D.P.R. 61 (1943), este Tribunal se negó a aplicar la anterior doctrina al caso de obreros que reclamaban salarios por trabajo rendido en violación de una ley que prohibía trabajar en exceso de ocho horas en cada día natural. Resolvió la corte en ese caso que la ley en cuestión se adoptó para la protección de los obreros; que los reclamantes habían realizado el cumplimiento total por su parte; que el negarle a tales obreros el derecho a recobrar equivale a castigar a aquél a quien la legislatura tuvo en mente proteger mediante la referida ley; que las partes contratantes no se hallaban en paridad contractual, y que el referirse a la referida ley como concebida para beneficio de la comunidad no significa que las cortes no deban dar consideración primordial a los derechos de los obreros; que cuando una de las partes no ha sido culpable de grave depravación moral, puede recobrar el valor de la labor rendida por ella; que no debe permitirse el enriquecimiento injusto en un caso como éste; que impedir al obrero recobrar su compensación es imponerle una penalidad que debe ser expresa y no inferida, y que es aplicable a esta situación la norma del Artículo 1257 del Código Civil, 31 L.P.R.A. sec. 3516. ■

En el caso del ejercicio ilegal de una profesión, por el contrario, la ley que la regula se adoptó "a los fines de proteger la vida, la salud y la propiedad y para fomentar el bienestar público." Negarle recobrar al que ejerce una profesión ilegalmente es castigar a quien no se desea proteger. No existen circunstancias de orden ni política pública o de otra naturaleza que justifiquen apartarse de la doctrina citada en el caso de *Pagán.* Además, las disposiciones del artículo 1257 del Código Civil antes citado son aplicables a

este tipo de caso donde el reclamante es el que ejerce ilícitamente la profesión y es el que ha incurrido en la falta y en el delito correspondiente.(³)

Afirma la recurrente en su alegato ante nos que la corporación recurrente está constituida por sólo dos accionistas que son ingenieros debidamente matriculados como tales, que rindieron los servicios de ingeniería y arquitectura en este caso actuando a través de una corporación.

En el caso de *Weed Architect, Inc.* v. *Horning*, 33 So.2d 648 (Fla. 1948), se trataba de ejecutar un gravamen sobre terrenos con el fin de recobrar honorarios convenidos por servicios de arquitectura rendidos a cabalidad de acuerdo con un contrato al efecto. La corte de instancia en este caso declaró con lugar una moción de los demandados para desestimar la demanda y el arquitecto demandante apeló de la misma. Se alegó, entre otras cosas para sostener la sentencia, que siendo el apelante una corporación estaba impedida en ley de obtener el gravamen en cuestión. La Corte Suprema del Estado de Florida resolvió en este caso que:

"Es muy cierto que bajo la ley una corporación no puede ser licenciada para ejercer la arquitectura, pero Robert L. Weed, Architect Inc., no era otra cosa que el *alter ego* de Robert L. Weed, o un medio a través del cual éste conducía su negocio como arquitecto. La demanda alegaba que Robert L. Weed era en todo momento un arquitecto licenciado como tal, que en tal capacidad él rindió los servicios en cuestión y que el contrato fue cumplido por Robert L. Weed, Architect, Inc., para beneficio de Robert L. Weed. A través de toda la transacción ambas partes reconocieron a Robert L. Weed como la parte realmente interesada, y que Robert L. Weed, Architect, Inc., no era otra cosa que una parte nominal en la transacción. . . . No existe la más leve sugestión que los apelados fueron engañados

---

(³) Véase la opinión de este Tribunal en el caso de *Rubio Sacarello* v. *Roig*, 84 D.P.R. 344 (1962), en el cual se hace un estudio minucioso y completo de las disposiciones del Código Civil sobre la nulidad de los actos y contratos ejecutados contra lo dispuesto en la ley.

o sufrieron perjuicio alguno por razón de que Robert L. Weed, el verdadero demandante, ejercía bajo el nombre de Robert L. Weed, Architect, Inc."

En tal virtud, el tribunal en ese caso revocó la sentencia apelada con instrucciones de que se reintalase la causa y se procediera de conformidad.

Es cierto que en la demanda en el caso de autos no se alegó que la corporación demandante estaba constituida por sólo dos ingenieros debidamente matriculados y colegiados como tales; ni que ellos fueron los que en realidad rindieron los servicios profesionales en este caso y que, por lo tanto, eran las partes realmente interesadas como demandantes; ni se solicitó permiso para enmendar la demanda a esos efectos una vez se dictó sentencia desestimando la demanda.   No es menos cierto que la corte de instancia declaró que la demanda no era susceptible de enmienda.   ■

Creemos y concluimos, sin embargo, que en bien de la justicia, y en un caso como el que nos ocupa, debe permitirse al demandante enmendar su demanda, de ser posible, para alegar con más precisión y detalle la relación existente entre la recurrente y sus accionistas y si éstos son en realidad la verdadera parte interesada en la acción con derecho a recobrar por servicios profesionales propiamente prestados.   Cfr. *De Jesús* v. *Abbott,* 77 D.P.R. 516, 524–525 (1954); *Mercedes Bus Line* v. *Rojas*, 70 D.P.R. 540–545, (1949); *Ramírez* v. *Municipio*, 67 D.P.R. 741 (1947).

*Por los motivos expuestos, la sentencia del Tribunal Superior será revocada y se devolverá el caso para ulteriores procedimientos no inconsistentes con esta opinión.*