662 So.2d 1288 (1995)
MIRACLE CENTER DEVELOPMENT CORP., Miracle Center International Corp., and Mirabar, Inc., Appellants,
v.
M.A.D. CONSTRUCTION, INC., Appellee.
No. 94-0297.
District Court of Appeal of Florida, Third District.
October 5, 1995.
Rehearing Denied November 21, 1995.
*1289 Richard J. Lee; Siegfried, Rivera, Lerner de la Torre & Petersen, and H. Hugh McConnell, for appellants.
Jacob Fishman, for appellee.
Before HUBBART, GERSTEN and GODERICH, JJ.
PER CURIAM.
Appellants, Miracle Center Development Corp., Miracle Center International Corp., and Mirabar, Inc. [hereafter collectively referred to as "Miracle Center"], appeal an amended final judgment awarding appellee, M.A.D. Construction, Inc. ["M.A.D."], damages in quantum meruit. M.A.D. cross-appeals the trial court's denial of a construction lien foreclosure claim. We reverse in part and affirm in part.
In October of 1990, Miracle Center leased tenant space in a shopping center to Theme Miami, Inc., who planned to open a nightclub on the premises. The lease agreement allowed Theme renovate the premises, and Theme contracted with M.A.D., a general contractor, to remodel the space.
Prior to working on the site, M.A.D. ran a title search on Miracle Center's property, failing to find any liens, and met with the shopping center's general manager. Shortly thereafter, in early November, M.A.D. began inspection, demolition, and renovation. As it continued work, M.A.D. met with the general manager daily.
On November 15, 1990, Miracle Center recorded a short-form lease which recited the lease's terms, including a prohibition of construction *1290 lien claims against Miracle Center's property interest for work performed at Theme's request. Neither Theme nor Miracle Center informed M.A.D. that a short-form lease had been filed or that Theme's lease prohibited construction liens.
On December 20, 1990, the electric company disconnected power to Theme's premises because Theme failed to pay the electricity bill. Finding it impossible to complete the renovations, M.A.D. left the premises ten days later, leaving mere cosmetic improvements, such as paint and floor covering, for completion. Theme defaulted on the lease, and M.A.D. filed, among other documents, a claim of lien, which contained several errors, against Miracle Center's property.
Miracle Center began re-marketing the space previously occupied by Theme, securing a new tenant in March 1992. After only cosmetic improvements to the premises, the new tenant opened up a nightclub.
M.A.D. sued Miracle Center, seeking an award of money damages under the theory of quantum meruit, and Theme, seeking contract damages of $55,780.86. The trial court awarded $30,000.00 in quantum meruit and $55,780.86 in contract damages. In addition, M.A.D. sought foreclosure of its construction lien against Miracle Center, but the trial court held the construction lien invalid. Miracle Center appeals the judgment to this Court, and M.A.D. cross-appeals. Theme is not a party to this appeal.
The first issue before this court is whether the judgment against Miracle Center for damages in quantum meruit is appropriate in light of the fact that M.A.D. also received a judgment against Theme for contract damages. Under these circumstances, we hold that quantum meruit recovery against Miracle Center is inappropriate.
It has been said that seeking to enforce an express contract while attempting the same purpose under quantum meruit is incongruous. Tobin & Tobin Ins. Agency, Inc. v. Zeskind, 315 So.2d 518 (Fla. 3d DCA 1975); see Yates v. Ball, 132 Fla. 132, 181 So. 341 (1937); Solutec Corp. v. Young & Lawrence Assocs., Inc. 243 So.2d 605 (Fla. 4th DCA 1971). Florida courts commonly apply this statement of law to circumstances involving only two parties, where one party seeks to enforce a contract against the other while asking the court to simultaneously award damages in equity as if no contract existed. However, this principle is equally applicable here.
When M.A.D. secured judgment against Theme for breach of contract, M.A.D. received an adequate remedy at law. M.A.D. has received judgment for the benefits of its renovation and construction services against the party with whom M.A.D. shared contractual privity. Just because the judgment was not against a third party who now enjoys some indirect benefit for those services does not mean that M.A.D. should be allowed essentially double recovery, reaping more than it would have gained had Theme not defaulted on the lease and breached its contract with M.A.D.
One court has observed that quasi-contractual remedy may be available where two parties tacitly enter an agreement of some sort after an express contract between them exists. See Southern Bell Tel. & Tel. Co. v. Acme Elec. Contractors, Inc., 418 So.2d 1187, 1189 (Fla. 4th DCA 1982) (citing 3 A.L. Corbin, Corbin on Contracts § 564 (1960)). The court also noted that "[i]f the law allows quasi-contract[ual] recovery where an express contract already exists, it certainly will do so where there is no contract between the parties." Id. While this may be the case in some circumstances, it is not the case here. A contract did not exist between M.A.D. and Miracle Center, yet M.A.D. received judgment for the value of its services, collecting contract damages against Theme based upon the existence of a valid contract between them. To allow M.A.D. to recover damages against Miracle Center for the same work performed and benefit bestowed would allow M.A.D. duplicative recovery. One party would walk away from litigation unjustly enriched, the same result courts attempt to *1291 prevent with the doctrine of quantum meruit. Thus, we reverse the judgment for $30,000 in quantum meruit damages against Miracle Center.
The second issue before this court is whether the trial court properly denied foreclosure of M.A.D.'s construction lien against Miracle Center. We affirm.
A contractor must substantially comply with the statutory provisions governing a mechanic's lien before the lien may be foreclosed. Masterbilt Corp. v. S.A. Ryan Motors, Inc., 149 Fla. 644, 6 So.2d 818, 820 (1942); see Browne v. Park, 144 Fla. 696, 198 So. 462 (1940); Buker v. Webster, 140 Fla. 471, 191 So. 835 (1939); Southern Paint Mfg. Co. v. Crump, 132 Fla. 799, 182 So. 291 (1938). The question in the instant case is whether M.A.D. can assert a mechanic's lien against Miracle Center's property when the contract between Miracle Center and Theme expressly prohibited any contractors hired by Theme from asserting liens against Miracle's property. The statutory language at issue is § 713.10 of the Florida Statutes, which provides the following:
When an improvement is made by a lessee in accordance with an agreement between such lessee and his lessor, the lien shall extend also to the interest of such lessor. When the lease expressly provides that the interest of the lessor shall not be subject to liens for improvements made by the lessee, the lessee shall notify the contractor making any such improvements of such provision or provisions in the lease, and the knowing or willful failure of the lessee to provide such notice to the contractor shall render the contract between the lessee and the contractor voidable at the option of the contractor.
Fla. Stat. § 713.10 (1993). Under this language, Miracle Center's property interest could be subject to liens arising from improvements performed on the land in only two instances: (1) if the lease between Miracle Center and Theme required such improvements to the property; or (2) under judicial interpretation, if the improvements to the property were the "pith of the lease." Cf. A.N. Drew, Inc. v. Frenchy's World Famous Cajun Cafe, Inc., 517 So.2d 766 (Fla. 1st DCA 1988) (seeming to entertain these two scenarios as if they were one in the same).
Miracle Center's lease with Theme explicitly provided that for any improvements Theme wished to make to the leased premises, Miracle Center's ownership interest would not be subject to a lien. In addition, the lease provided that before improvements on the property could begin, Miracle Center must provide written consent. While the lease seemed to anticipate that the leased premises might be renovated at some point during the leasehold, such renovations were not vital to the lease's perpetuality. Budget Elec. Co. v. Strauss, 417 So.2d 1143, 1144 (Fla. 5th DCA 1982) (distinguishing between leases which "contemplate" improvements and those which "require" improvements); see Davidson Lumber Co. v. Sullivan, 403 So.2d 560 (Fla. 3d DCA 1981); Tom Joyce Realty Co. v. Popkin, 111 So.2d 707 (Fla. 3d DCA 1959); Van D. Costas, Inc., v. Rosenberg, 432 So.2d 656 (Fla. 2d DCA 1983); cf. A.N. Drew, 517 So.2d at 767-68 (holding that renovations were the "pith of the lease" where the tenant agreed to lease the premises only if renovations were performed).
M.A.D. argues that despite the lease's language, the renovations it performed under contract with Theme were the "pith of the lease." See, e.g., Edward L. Nezelek, Inc. v. Food Fair Props. Agency, Inc., 309 So.2d 219 (Fla. 3d DCA 1975). On the contrary, the lease indicates that Miracle Center did not intend to be financially accountable for the any of the improvements made on the leased premises. Merely requiring the owner's consent for improvements to the leased premises does not confer or grant to the contractor the authority to complete the work. Masterbilt Corp., 6 So.2d at 819. Because nothing in the record signifies any inconsistent endeavor by Miracle Center indicating it intended to obligate its property to the lien of the act, the lien cannot properly attach to its ownership *1292 interest. Id.; see Davidson Lumber Co., 403 So.2d at 561-62. Thus, the trial court's judgment as it pertains to M.A.D.'s construction lien must be affirmed.
Reversed in part; affirmed in part.