ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| **MANUEL L. BIRRIEL RAMOS**<br>DEMANDANTE(S)-APELADA(S)<br><br><br>V.<br><br><br>**GOBIERNO MUNICIPAL DE HATILLO<br>(MUNICIPIO DE HATILLO)**<br>DEMANDADA(S)-APELANTE(S) | **KLAN202500103** | *APELACIÓN*<br>procedente del Tribunal de Primera Instancia, Sala Superior de **ARECIBO**<br><br>Caso Núm.<br>**AR2022CV02093** (303)<br><br>Sobre:<br>Cobro de Dinero |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos.

*Barresi Ramos*, juez ponente

### S E N T E N C I A

En San Juan, Puerto Rico, hoy día 26 de febrero de 2026.

Comparece ante este Tribunal de Apelaciones, el **GOBIERNO MUNICIPAL DE HATILLO** (**MUNICIPIO**) mediante *Apelación* incoada el 10 de febrero de 2025. En su escrito, nos solicita que revisemos la *Sentencia Sumaria Parcial* dispuesta el 26 de noviembre de 2024 por el Tribunal de Primera Instancia (TPI), Sala Superior de Hatillo.[1] Mediante dicha decisión, el foro de instancia declaró no ha lugar la *Moción de Sentencia Sumaria Parcial* presentada el 11 de agosto de 2023 por el **MUNICIPIO;** y ha lugar la *Oposición a Moción de Sentencia Sumaria Parcial y Moción de Sentencia Sumaria Parcial* presentada el 24 de abril de 2024 por el señor **MANUEL L. BIRRIEL RAMOS** (señor **BIRRIEL RAMOS**). Así, le impuso al **MUNICIPIO** solventar $31,561.00 por los trabajos realizados y dejados de desembolsar a favor del señor **BIRRIEL RAMOS**

---

[1] Este dictamen judicial fue notificado y archivado en autos el 2 de diciembre de 2024. Apéndice de la *Apelación*, págs. 227-243.

Número Identificador: SEN2026_____

Exponemos el trasfondo fáctico y procesal que acompañan a la presente controversia.

- I -

El 22 de noviembre de 2022, el señor **BIRRIEL RAMOS** instó una *Demanda* sobre incumplimiento de contrato, cobro de dinero, así como daños y perjuicios en contra del **MUNICIPIO**.[2] Tres (3) días después, presentó una *Demanda Enmendada* a los únicos fines de corregir el nombre del alcalde.[3] En esta, enunció que el 30 de abril de 2018, concretó una propuesta al **MUNICIPIO** para realizar los trabajos de inspección del *Proyecto de Construcción del Sistema Sanitario del Barrio Palma Gorda* (Proyecto). Señaló que la propuesta le fue adjudicada y el 22 de enero de 2019, se suscribió el *Contrato de Servicios Profesionales Inspección Residente* (*Contrato 2019*) cuya vigencia era desde el 22 de enero de 2019 hasta el 14 de julio de 2020.[4] Aseveró que dicho *Contrato 2019* fue registrado ante la Oficina del Contralor.

Argumentó que debido al cierre causado por la pandemia del Covid-19, el Proyecto se paralizó por espacio de dos (2) meses, por lo que, se otorgó el *Contrato 2021-000135* (*Contrato 2021*) para la terminación de la obra.[5] El nombrado contrato tuvo vigencia desde el 15 de julio de 2020 hasta el 14 de mayo de 2021.

Manifestó que, con posterioridad, se pactó la *Enmienda A* del *Contrato 2021* para cambiar la efectividad desde el 30 de octubre de 2020 hasta el 14 de abril de 2021.[6] Exteriorizó que el 13 de abril de 2021 se convino una *Enmienda B* del *Contrato 2021* para extender la eficacia hasta el 14 de marzo de 2022, con una compensación total de $53,383.00.[7]

En relación con la *Enmienda B* del *Contrato 2021*, el señor **BIRRIEL RAMOS** expuso que cumplió con los trabajos de inspección desde el 15 de abril

---

[2] Apéndice de la *Apelación*, págs. 1-4.
[3] *Íd.*, págs. 5-8.
[4] Apéndice de la *Apelación*, págs. 65-77. Dicho acuerdo tuvo una duración de dieciocho (18) meses, desde 22 de enero de 2019 al 14 de julio de 2020.
[5] Apéndice de la *Apelación*, págs. 154-166.
[6] *Íd.*, págs. 96-99.
[7] *Íd.*, págs. 100-101.

de 2021 hasta el 30 de septiembre de 2021. Punteó que el **MUNICIPIO** no cumplió con los pagos acordados; y el 12 de octubre de 2021, le remitió un pliego en el cual reclamó todo lo adeudado.[8] No empecé lo anterior, puntualizó que continuó realizando los trabajos de inspección hasta el 29 de octubre de 2021. El señor **BIRRIEL RAMOS** enfatizó que, el 1 de noviembre de 2021, ante el impago e incumplimiento contractual, le avisó personalmente su intención de dar por terminado el contrato al **MUNICIPIO** y le adjuntó su factura de octubre de 2021.

En respuesta, el 8 de marzo de 2023, el **MUNICIPIO** presentó una *Contestación a Demanda Enmendada y Reconvención* conteniendo sus defensas afirmativas.[9] Negó la existencia de la deuda y exigió la devolución del dinero pagado en exceso de lo pactado ascendente a la suma de $9,706.00. Interpeló la compensación de $290,733.00 por los daños ocasionados ante la omisión del señor **BIRRIEL RAMOS**. El 24 de marzo de 2023, el señor **BIRRIEL RAMOS** presentó una *Moción de Desestimación y/o Réplica a Reconvención*.[10]

Más tarde, el **MUNICIPIO** enmendó su *Reconvención* en dos (2) ocasiones.[11] La primera enmienda tuvo el propósito de desglosar los daños sufridos, mientras que la segunda enmienda se realizó para clamar una partida adicional de $42,067.20. Esto último por los gastos incurridos en la contratación de HB Arqui Plani CSP, como consecuencia de la violación contractual del señor **BIRRIEL RAMOS**.

El 10 de mayo de 2023, el señor **BIRRIEL RAMOS** presentó una *Moción de Desestimación y/o Réplica a Reconvención Enmendada y Segunda Reconvención Enmendada*.[12] Seguidamente, el 27 de junio de 2023, se decretó

---

[8] Apéndice de la *Apelación*, págs. 98-99.
[9] *Íd.*, págs. 9-14.
[10] *Íd.*, págs. 15-18.
[11] El 2 de abril de 2023, el **MUNICIPIO** presentó su *Reconvención Enmendada* (págs. 21-25). El 19 de abril de 2023, presentó *Moción para Presentar Segunda Reconvención Enmendada* acompañada de la *Segunda Reconvención Enmendada* (págs. 26-32).
[12] Apéndice de la *Apelación*, págs. 33-38.

*Resolución sobre Desestimación* declarando *no ha lugar* a la desestimación de la Reconvención Enmendada y Segunda Reconvención Enmendada.[13]

El 11 de agosto de 2023, el **MUNICIPIO** presentó una *Moción de Sentencia Sumaria Parcial*.[14] Allí planteó que, no tenía deuda con el señor **BIRRIEL RAMOS** dado que le pagó en exceso el dinero concertado según los contratos firmados. Adujo que el señor **BIRRIEL RAMOS** infringió su obligación al dejar de prestar sus servicios, lo cual le causó daños al **MUNICIPIO** debido a que el Proyecto tuvo que ser paralizado por falta de inspección. Acotó que, en virtud de la cláusula 1.3 del *Contrato 2021*, el señor **BIRRIEL RAMOS** "será responsable de continuar cumpliendo con las obligaciones y deberes objeto de este contrato hasta que la referida obra sea entregada a EL MUNICIPIO sin más paga que la aquí contratada...".[15] Especificó que el señor **BIRRIEL RAMOS** le adeudaba el importe de $9,706.00 por dinero pagado en exceso y $290,733.00 por los daños provocados al incumplir el contrato. Por tanto, requirió –entre otros– que se condenara al señor **BIRRIEL RAMOS** reembolsar la cifra de $9,706.00, más las costas y honorarios de abogado.

Mas tarde, el 24 de abril de 2024, el señor **BIRRIEL RAMOS** presentó su *Oposición a Moción de Sentencia Sumaria Parcial y Moción de Sentencia Sumaria Parcial*.[16] Infirió, en esencia, que existía controversia en cuanto a los hechos que el **MUNICIPIO** desplegó estaban incontrovertidos. De modo que,

---

[13] Apéndice de la *Apelación*, pág. 50.
[14] *Íd.*, págs. 54-104. Dicho escrito tiene anexado los siguientes documentos: *Contrato de Servicios Profesionales 2019-000393* (págs. 65-77); *Reglamento Junta de Subasta* (págs. 78-82); *Contrato de Servicios Profesionales 2021-000135* (págs. 83-95); *Contrato de Servicios Profesionales 2021-000135-A* (págs. 96-97); Misiva datada 12 de octubre de 2021 (págs. 98-99); *Enmienda Contrato de Servicios Profesionales 2021-000135-B* (págs. 100-101); Comunicación fechada 13 de octubre de 2021 (págs. 102-103); *Minuta-Resolución* de 12 de marzo de 2024 (pág. 104).
[15] Apéndice de la *Apelación*, pág. 56.
[16] *Íd.*, págs. 105-186. Está acompañada de los siguientes anejos: *Demanda Enmendada* (págs. 137-140); *Contrato de Servicios Profesionales 2019-000393* (págs. 141-153); *Contrato de Servicios Profesionales 2021-000135* (págs. 154-166); *Contrato de Servicios Profesionales 2021-000135-A* (págs. 167-168); Contract Change Order No. 5 (Orden de Cambio) (págs. 169-174); Carta de 9 de abril de 2021 (pág. 175); Correspondencia de 9 de abril de 2021 (pág. 176); *Enmienda Contrato de Servicios Profesionales 2021-000135-B* (págs. 177-178); Comunicado cursado el 12 de octubre de 2021 (págs. 179-180); Epístola de 1 de noviembre de 2021 (págs. 181-184); Documento fechado el 9 de diciembre de 2021 (págs. 185-186).

propuso hechos sobre los cuales no existían controversias y suplicó se dictará sentencia sumaria a su favor.

Más adelante, el 24 de mayo de 2024, el **MUNICIPIO** presentó su *Oposición a "Moción de Sentencia Sumaria Parcial".*[17] Ante ello, el 12 de julio de 2024, el señor **BIRRIEL RAMOS** presentó su *Réplica a Oposición a Moción de Sentencia Sumaria Parcial.*[18]

El 26 de noviembre de 2024, se expidió la *Sentencia Sumaria Parcial* apelada comprendiendo las siguientes determinaciones de hechos:

1. El ingeniero Birriel es mayor de edad, ingeniero civil de profesión, licencia 5816, casado y residente de Hatillo, Puerto Rico. **Hecho admitido**.

2. El Municipio es una entidad gubernamental constituida y regida por el Código Municipal de Puerto Rico, Ley 107 de 2020, con capacidad para contratar servicios profesionales, Artículo 1.008 (n), demandar y ser demandada, Artículo 1.008 (b). **Hecho admitido**.

3. El ingeniero Birriel sometió una propuesta el 30 de abril de 2018 para realizar los trabajos de inspección del Proyecto de Construcción del Sistema Sanitario del Barrio Palma Gorda (P-174-2015) (el "Proyecto"). **Hecho admitido**.

4. Al ingeniero Birriel se le adjudicó la propuesta para el Proyecto y fue notificado de ello el 18 de enero de 2019. **Hecho admitido**.

5. El 22 de enero de 2019, las partes firmaron el Contrato 2019-000393 (en adelante, Contrato 2019) mediante el cual el ingeniero Birriel brindaría los servicios de inspección al Proyecto. El Contrato 2019 se registró en la Oficina del Contralor y tenía vigencia de 22 de enero de 2019 a 14 de julio de 2020. **Hecho admitido**.

6. El Contrato 2019 estableció en su cláusula CUARTA:

> **"EL INGENIERO"** devengará como compensación por los servicios profesionales detallados en este contrato la suma de **$87,354.00** por la Inspección Residente del proyecto. *Véase:* Anejo 1 Contrato 2019.

7. En su cláusula QUINTA, el Contrato 2019, dispuso:

> Los pagos por servicios de Inspección del mencionado proyecto se realizarán a razón **de $4,853.00 mensual. De los cuales el último pago se realizará una vez el proyecto sea terminado y aceptado**. *Véase*: Anejo 1 Contrato 2019.

8. En la cláusula SEXTA, el Contrato 2019, dispuso:

---

[17] Apéndice de la *Apelación*, págs. 187-193.
[18] Apéndice de la *Apelación*, págs. 195-208.

> **EL INGENIERO** no podrá reclamar pagos por concepto de Inspección adicionales a los aquí establecidos por extensiones de tiempo concedidos a **EL CONTRATISTA** para la entrega de la obra a **EL MUNICIPIO**. No obstante, en caso de que surja la necesidad de un Cambio de Orden aumentando el costo del proyecto y/o obra en construcción, **EL INGENIERO** deberá someter su propuesta al respecto a la Junta de Subastas para su consideración y aprobación. *Véase*: Anejo 1 Contrato 2019.

9. Esta prohibición contenida en la mencionada cláusula SEXTA tiene su origen en el Art. 14.001, sección D, inciso D del Reglamento de la Junta de Subasta del Municipio, aprobado el 6 de marzo de 2012, que dispone:

> Toda persona o entidad contratada para prestar servicios de supervisión o inspección de proyectos municipales no podrán solicitar enmiendas a sus contratos para pagos durante extensiones de tiempo a contratistas para la entrega final de dichos proyectos, no obstante, podrán hacerse enmiendas a los contratos de servicios por concepto de supervisión o inspección de proyectos aumentando el pago de los servicios a prestar cuando la Orden de Cambio sea aumentando el precio original del proyecto. Tampoco podrá solicitar pagos durante el tiempo que esté paralizado el proyecto por cualquier razón. *Véase*: Anejo 2 Reglamento Junta de Subasta.

10. Bajo el Contrato 2019, al ingeniero Birriel se le pagaron 11 de los 18 meses que duraba el Contrato 2019, para un total de $53,383, quedando un sobrante de $33,971. **Hecho admitido**.

11. Al ingeniero Birriel no se le pagaron siete meses porque no hubo obras de construcción durante esos meses. Durante los primeros cinco meses del Contrato 2019 no hubo obras de construcción porque las obras comenzaron cinco meses después de que se firmó el Contrato 2019. Luego, hubo otros dos meses (de 15 de marzo a 12 de mayo de 2020) que no se realizaron obras de construcción porque el Gobierno ordenó la paralización de estas debido a la pandemia del COVID-19. **Hecho admitido**.

12. Al día siguiente del vencimiento del Contrato 2019, o sea el 15 de julio de 2020, entró en vigencia el contrato 2021-000135 (en adelante, Contrato 2021) suscrito por las mismas partes y con el mismo propósito: que el ingeniero Birriel brindara servicios de inspección al Proyecto. El Contrato 2021 fue registrado en la Oficina del Contralor. **Hecho admitido**.

13. El Contrato 2021 tenía una vigencia de 10 meses y fecha de vencimiento el 14 de mayo de 2021. **Hecho admitido**.

14. El Contrato 2021 estableció en su cláusula CUARTA lo siguiente:

> **"EL INGENIERO"** devengará como compensación por los servicios profesionales detallados en este contrato la suma de **$48,530.00** por la Inspección

Residente del proyecto. **Véase**: Anejo 3 Contrato 2021.

15. En su cláusula QUINTA, el Contrato 2021 dispuso lo siguiente:

Los pagos por servicios de Inspección del mencionado proyecto se realizarán a razón de **$4,853.00 mensual. De los cuales el último pago se realizará una vez el proyecto sea terminado y aceptado por el Municipio de Hatillo**. *Véase*: Anejo 3 Contrato 2021.

16. En su cláusula SEXTA, el Contrato 2021 dispuso lo siguiente:

**EL INGENIERO** no podrá reclamar pagos por concepto de Inspección adicionales a los aquí establecidos por extensiones de tiempo concedidos a **EL CONTRATISTA** para la entrega de la obra a **EL MUNICIPIO**. No obstante, en caso de que surja la necesidad de un Cambio de Orden aumentando el costo del proyecto y/o obra en construcción, **EL INGENIERO** deberá someter su propuesta al respecto a la Junta de Subastas para su consideración y aprobación. *Véase*: Anejo 3 Contrato 2021.

17. La cláusula 1.3 del Contrato 2021 dispone lo siguiente:[19]

1.3- **EL INGENIERO** será responsable de continuar cumpliendo con las obligaciones y deberes objeto de este contrato hasta que la referida obra sea entregada a **EL MUNICIPIO** sin más paga que la aquí contratada, excepto que se realice un cambio aumentativo en costo al proyecto por el cual podrá someter la propuesta correspondiente a la Junta de Subastas. Es decir, **EL INGENIERO** no podrá solicitar enmiendas a este contrato, con paga, por extensiones de tiempo concedidos a **EL CONTRATISTA** para la entrega final de la obra. Tampoco podrá solicitar pagos durante el tiempo que tenga que paralizarse el proyecto por cualquier razón. *Véase*: Anejo 3 Contrato 2021.

18. El 30 de octubre de 2020, las partes suscribieron la Enmienda A al Contrato 2021 (en adelante, Enmienda A) para establecer que la fecha de vencimiento del Contrato 2021 sería un mes antes de lo pactado originalmente, o sea, que el Contrato 2021 vencería el 14 de abril de 2021 y no el 14 de mayo de 2021. La eliminación de dicho mes conllevó que la cuantía a pagarse se enmendara también de $48,530 a $43,677. **Hecho admitido.**

19. Bajo el Contrato 2021 y su Enmienda A, al ingeniero Birriel se le pagaron los nueve meses que duró para un total de $43,677. **Hecho admitido**.

20. Las sumas reclamadas por el ingeniero Birriel en su demanda enmendada corresponden a trabajos realizados desde el 15 de abril de 2021 en adelante. **Hecho admitido**.

21. El 13 de abril de 2021, las partes suscribieron la Enmienda B al Contrato 2021 (en adelante, Enmienda B) para establecer que la

---

[19] Esta cláusula existe en el *Contrato 2019.*

fecha de vencimiento del Contrato 2021 sería el 14 de marzo de 2022, o sea 11 meses después de la fecha de vencimiento fijada en la Enmienda A. **Hecho admitido**.

22. En esta Enmienda B, las partes establecieron que el Municipio le pagaría al ingeniero Birriel la suma adicional de $53,383, a ser pagada mediante 11 pagos mensuales de $4,853. **Hecho admitido**.

23. El demandante continuó realizando los trabajos de inspección en el Proyecto hasta el 29 de octubre de 2021. *Véase* párrafo 15 demanda enmendada (SUMAC Núm. 4).

24. La cláusula DUODECIMA de ambos contratos establece lo siguiente:

> Si por alguna causa, "**EL INGENIERO**" no cumple con sus obligaciones bajo este Contrato, "**EL MUNICIPIO**" podrá dar por terminado el presente Contrato o requerir la prestación de los servicios y puede hacer responsable a "**EL INGENIERO**" por cualquier daño causado a "**EL MUNICIPIO**" por razón de incumplimiento y terminación del Contrato. En tal evento, cualquier documento de trabajo o plano terminado, preparado por "**EL INGENIERO**" [sic.] bajo este contrato, a opción del "**EL MUNICIPIO**" será su propiedad, por lo cual "**El INGENIERO**" recibirá una justa compensación por cualquier trabajo terminado a satisfacción de "**EL MUNICIPIO**".
> En caso de daños recibidos por "**EL MUNICIPIO**" por razón de cualquier incumplimiento de Contrato por "**EL INGENIERO**", "**EL MUNICIPIO**" puede retener los pagos a "**EL INGENIERO**" hasta que se solucione la situación. *Véase* Anejo 1 (Contrato 2019) y Anejo 3 (Contrato 2021).[20]

En su análisis, el foro primario interpretó que, acorde a las cláusulas del Contrato, "[c]ualquier cambio que se lleve ante la Junta de Subasta ("Junta") mediante Orden de Cambio, que implique aumentar los costos o los trabajos a realizarse deberá aprobarse por la Junta; lo que necesariamente podría implicar un aumento en la cantidad a pagar al demandante, de consistir en un cambio aditivo."[21] Igualmente, comprendió que:

> En casos como el de autos, cada orden de cambio constituye un nuevo acuerdo que está sujeto a las características intrínsecas del contrato de obra a precio alzado y a la teoría de las obligaciones y contratos; más aún cuando la orden de cambio debe pasar por un proceso de propuesta y aprobación de una junta de subastas. De la orden de cambio número 5 surge claramente que la justificación para el mismo se debía a la demora por parte del Municipio en la adquisición de la parcela donde se completaría la construcción de la estación de bomba sanitaria. **Dicha orden de cambio fue**

---

[20] No se acogen las determinaciones de hechos 25-33 propuestos por el señor **BIRRIEL RAMOS**.
[21] Apéndice de la *Apelación*, pág. 239.

> **evaluada y autorizada debidamente por la Junta de Subasta, lo cual se notificó el 9 de abril de 2021.**[22]

El tribunal de instancia concluyó que en el presente caso quedó demostrado que la falta de diligencia del **MUNICIPIO** en adquirir el terreno para completar la obra fue lo que ocasionó el retraso y aumentó los costos:

> Los atrasos que ocasionaron la creación de la Orden de Cambio #5 son el resultado de subastar el proyecto sin comprar la parcela donde ubicaría la estación de bombas del proyecto sanitario, lo que provocó los 312 días de retraso y un aumento en costos indirectos del proyecto en $131, 585.50[.][23]

Precisó que el señor **BIRRIEL RAMOS** cumplió con sus obligaciones como supervisor del Proyecto hasta que el **MUNICIPIO** no honró los términos de la *Enmienda B* del *Contrato 2021* asimismo del segundo contrato. Por consiguiente, reiteró que ambos contratos otorgados proveían para que el señor **BIRRIEL RAMOS** recibiera una compensación adicional por su trabajo en caso de que se produjeran órdenes de cambio aditivas, que aumentaran los costos del Proyecto. Conformemente, le sancionó al **MUNICIPIO** sufragar $31,561.00, por los labores realizados y dejados de pagar al señor **BIRRIEL RAMOS**.[24]

Así las cosas, el 9 de diciembre de 2024, el señor **BIRRIEL RAMOS** presentó *Moción Solicitando Determinaciones Adicionales sobre Temeridad de la Parte Demandada e Imposición de Honorarios de Abogado*.[25] El mismo día, el **MUNICIPIO** presentó su *Oposición a Mociones Solicitando Costas y Honorarios de Abogado*.[26] El 30 de enero de 2025, se dictaminó *Resolución Interlocutoria* declarando *no ha lugar* a la *Moción Solicitando Determinaciones Adicionales sobre Temeridad de la Parte Demandada e Imposición de Honorarios de Abogado*.

---

[22] *Íd.*, pág. 240. (Énfasis nuestro)
[23] Apéndice de la *Apelación*, pág. 241.
[24] *Íd.*, pág. 242.
[25] *Íd.*, págs. 247-250.
[26] *Íd.*, págs. 251-254.

Inconforme, el 10 de febrero de 2025, el **MUNICIPIO** acudió ante este foro revisor intermedio mediante *Apelación* señalando el(los) siguiente(s) error(es):

> Erró el TPI al resolver que el ingeniero Birriel tiene derecho a cobrar $31,561 por el trabajo que realizó durante la vigencia de la Enmienda B debido a que hubo una orden de cambio en el Proyecto que aumentó su costo en $131,585.50.

El **MUNICIPIO** esbozó que, de la totalidad cobrada por el señor **BIRRIEL RAMOS** bajo el *Contrato 2021* y la *Enmienda A* del *Contrato 2021*, emergía que se le pagó $9,706.00 superior al máximo que podía cobrar. Agregó que la orden de cambio número cinco (#5) se firmó con el propósito de extender el contrato de construcción y añadirle $131,585.50 para cubrir los gastos incurridos por el contratista debido a la paralización que tuvo el Proyecto durante diez (10) meses anteriores a la orden de cambio de referencia. Razonó que, si bien es cierto que se aumentó el costo del Proyecto, se trató de un reembolso de gastos incurridos por el contratista y no de una obra nueva o distinta que aumentara o modificara la obra de construcción. Añadió que, de confirmarse la sentencia del foro de instancia, se estaría avalando que el señor **BIRRIEL RAMOS** cobrara dos (2) veces por el mismo trabajo. En vista de ello, solicitó se revocara la sentencia dictada por el TPI y se declarara ha lugar la *Reconvención* instada.

El 18 de febrero de 2025, pronunciamos *Resolución,* en la cual, entre otras cosas, concedimos un término de treinta (30) días para presentar su alegato en oposición al señor **BIRRIEL RAMOS**. En cumplimiento, el 25 de marzo de 2025, el señor **BIRRIEL RAMOS** presentó un *Alegato de la Parte Demandante-Apelada Ingeniero Manuel L. Birriel Ramos*. En síntesis, este discutió que cumplió con todas sus obligaciones como supervisor del Proyecto, hasta que el **MUNICIPIO** decidió no honrar los términos de la *Enmienda B* del *Contrato 2021*. Relató que los dos (2) contratos otorgados y sus enmiendas, contrario a lo conjeturado por el **MUNICIPIO**, proveían para que recibiera una compensación adicional por su trabajo en caso de que se

produjeran órdenes de cambio que aumentasen los costos del Proyecto. De manera que, pidió se desestimara el presente recurso.

El 9 de abril de 2025, el **Municipio** presentó una *Breve Réplica a Alegato del Apelado*. En esta, aclaró que la orden de cambio número cinco (#5) no incluyó trabajos adicionales ni variaciones en la obra. Recalcó que las cláusulas contractuales disponían que la cuantía del contrato solo podía ser aumentada si la fecha de terminación de la obra se extendía por trabajos adicionales no contemplados en el proyecto original y si la construcción se paralizaba, el señor **Birriel Ramos** no tenía derecho a cobrar durante ese periodo de tiempo.

Evaluado concienzudamente el expediente del caso y contando con el beneficio de la comparecencia de ambas partes, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

- II -

- A – *Sentencia Sumaria*

La *sentencia sumaria* es un mecanismo procesal disponible para adjudicar controversias sin la celebración de un juicio.[27] Su propósito o finalidad es propiciar la solución justa, rápida y económica de los litigios civiles que no presentan controversias genuinas de hechos materiales, y en los cuales sólo resta dirimir una controversia de derecho.[28]

Este mecanismo se encuentra instituido por la Regla 36 de las de Procedimiento Civil de 2009.[29] Esta prescribe que cualquiera de las partes "podrá presentar [...] una moción fundamentada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte

---

[27] *Cruz, López v. Casa Bella y otros,* 2024 TSPR 47, resuelto el 8 de mayo de 2024; *Birriel Colón v. Econo y otro,* 213 DPR 80 (2023); *Segarra Rivera v. Int'l. Shipping et al.,* 208 DPR 964, 979 (2022).
[28] *Id.*
[29] 32 LPRA Ap. V, R. 36.3 (a); *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414 432 (2013).

sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación solicitada".[30]

Lo anterior implica que, la parte promovente debe demostrar que no existe *controversia sustancial* sobre algún hecho material, pues la *sentencia sumaria* solo debe dictarse en casos claros, cuando el tribunal tenga ante sí la verdad sobre todos los hechos pertinentes.[31] Para ello, debe desglosar en párrafos debidamente numerados y, para cada uno de ellos, debe especificar la página o el párrafo de la declaración jurada u otra prueba admisible en evidencia que lo apoya.[32] La jurisprudencia interpretativa ha definido que "[u]n hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable".[33]

Por su parte, quien se opone a que se dicte *sentencia sumaria* está obligado a controvertir la prueba presentada, contestando de forma detallada y específica aquellos hechos pertinentes para demostrar que existe una *controversia real y sustancial* que debe dilucidarse en juicio.[34] Entre la evidencia que puede presentar, están las siguientes: "certificaciones, documentos públicos, admisiones de la parte contraria, deposiciones, contestaciones a interrogatorios, declaraciones juradas o affidávits, y hasta prueba oral".[35] En otras palabras, no basta con presentar meras afirmaciones. Resulta insuficiente para derrotar una solicitud de *sentencia sumaria* una declaración jurada que meramente exponga conclusiones reiteradas de las alegaciones de la demanda y hechas sin conocimiento personal de los hechos.[36] Empero, será el análisis del derecho aplicable y de la existencia de alguna *controversia sustancial de hechos materiales* lo que determinará si

---

[30] 32 LPRA Ap. V, R. 36.1 y 36.2. *Acevedo y otros v. Dpto. de Hacienda*, 212 DPR 335 (2023).

[31] *Oriental Bank v. Caballero García*, 212 DPR 671 (2023).

[32] Regla 36.3(a) de las de Procedimiento Civil de 2009, *supra*; *SLG Zapata-Rivera v. J.F. Montalvo, supra*.

[33] *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981 (2023).

[34] *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 336 (2021); *Ramos Pérez v. Univisión*, 178 DPR 200, 214. (2010).

[35] *Acevedo y otros v. Depto. Hacienda y otros, supra*, citando a R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta ed., San Juan, LexisNexis, 2017, pág. 318. Véase, además, la Regla 36.5 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.5.

[36] *Ramos Pérez v. Univisión, supra*, págs. 215- 216.

procede dictar sentencia sumariamente, y no el que la parte contraria deje de oponerse a la solicitud, o lo haga defectuosamente.[37]

Al evaluar la procedencia de la solicitación de *sentencia sumaria,* el tribunal **analizará los documentos que acompañan la moción de *sentencia sumaria,* los documentos incluidos con la moción en oposición y aquellos que obren en el expediente del tribunal.**[38] Por ello, "[t]oda inferencia que se haga a base de los hechos y documentos que obren en los autos, debe tomarse desde el punto de vista más favorable al que se opone a la solicitud de sentencia sumaria".[39] Más aún, el tribunal no tiene que considerar los hechos que no estén debidamente enumerados y no hagan referencia a los párrafos o páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establezcan.[40] Tampoco tiene la obligación de considerar cualquier parte de una declaración jurada o de otra prueba admisible en evidencia a la cual no se haya hecho referencia en la relación de hechos.[41]

No obstante, "cualquier duda no es suficiente para derrotar una moción de sentencia sumaria; por el contrario, tiene que ser una duda que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes".[42] Por tanto, "[existe] una controversia real cuando la prueba ante el tribunal es de tal naturaleza que un juzgador racional de los hechos podría resolver a favor de la parte promovida".[43]

La parte promovente puede prevalecer por la vía sumaria si presenta prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. En cambio, la parte promovida puede derrotar la moción de tres (3) maneras diferentes: (1) si establece una controversia real de hechos sobre

---

[37] *Ortiz v. Holsum*, 190 DPR 511, 525 (2014).

[38] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 913 (1994). (énfasis nuestro).

[39] *ELA v. Cole*, 164 DPR 608, 626 (2005); *Mgmt. Adm. Servs. Corp. v. E.L.A.*, 152 DPR 599, 610-611 (2000).

[40] Regla 36.3(d) de las de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36.3(d). Véase, además, *SLG Zapata-Rivera v. J.F. Montalvo, supra*, pág. 433.

[41] *Íd.*

[42] *Ramos Pérez v. Univisión, supra*, pág. 214.

[43] *Íd.*

uno de los elementos de la causa de acción de la parte promovente; (2) si presenta prueba que apoye una defensa afirmativa; o (3) si presenta prueba que establezca una controversia sobre la credibilidad de los testimonios jurados que presentó la parte promovente.[44] Esta parte no puede descansar en meras alegaciones sino que viene obligada a contestar en forma tan detallada y específica como lo haya hecho la parte promovente.[45] Ahora bien, la falta de oposición a la moción de *sentencia sumaria* no conlleva la concesión automática del remedio solicitado, si existe una controversia legítima sobre un hecho material, o si la sentencia no procede conforme al derecho sustantivo aplicable.[46] Del mismo modo, el tribunal puede dictar *sentencia sumaria* de naturaleza interlocutoria para resolver cualquier controversia que existe entre las partes y sea separable de las controversias restantes.[47]

"[N]o es aconsejable utilizar la moción de sentencia sumaria en casos en donde existe controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de la credibilidad es esencial y está en disputa".[48] Empero, "la regla no excluye tipos de casos y realmente puede funcionar en cualquier contexto sustantivo".[49]

La Regla 36.4 de las de Procedimiento Civil de 2009 delimita las instancias en que el Tribunal de Primera Instancia está obligado a consignar en su dictamen los hechos materiales sobre los cuales no hay controversia, y cuáles hechos materiales halló controvertidos; a saber: (1) cuando no se dicta *sentencia sumaria* sobre la totalidad del pleito; (2) cuando no se concede todo el remedio solicitado; y (3) cuando se deniega la moción de *sentencia sumaria*.[50] Estas tres (3) instancias conllevan la celebración de una audiencia

---

[44] *Íd.*, pág. 217.
[45] Regla 36.3 (c) de las de Procedimiento Civil de 2009.
[46] *Ortiz v. Holsum de PR, Inc., supra,* pág. 525 (2014); *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 137 (2015) (Estrella Martínez, opinión disidente).
[47] 32 LPRA Ap. V, R. 36.3(e).
[48] *Ramos Pérez v. Univisión PR, Inc., supra,* pág. 219.
[49] *Íd.,* pág. 220.
[50] 32 LPRA Ap. V, R. 36.4. *Pérez Vargas v. Office Depot,* 203 DPR 687, 697 (2019).

en su fondo. En estos casos, la consignación en la *sentencia sumaria* de los hechos materiales sobre los cuales no hay controversia sustancial hace innecesario presentar evidencia o prueba sobre estos durante el juicio.[51]

Dicho esto, este Tribunal de Apelaciones se encuentra en la misma posición que el Tribunal de Primera Instancia al momento de revisar [denegaciones] o concesiones de mociones de *sentencia sumaria*.[52] Esto significa que, al evaluar la solicitud de *sentencia sumaria*, al igual que el foro primario, debemos aplicar los criterios de la Regla 36 de las de Procedimiento Civil de 2009 y su jurisprudencia interpretativa. Ello supone examinar el expediente de la manera más favorable hacia la parte que se opuso a la solicitud de *sentencia sumaria*, llevando a cabo todas las inferencias permisibles a su favor. Como resultado, tenemos el deber de revisar que tanto la moción de *sentencia sumaria* como su oposición cumplan con los requisitos de forma instituidos en la Regla 36 de las de Procedimiento Civil de 2009.[53]

En esencia, si el foro primario **acogió la moción** y dictó sentencia sumariamente, nos corresponderá revisar que, efectivamente si existen hechos materiales en controversia.[54] De no existir, procederemos entonces a revisar de *novo* si el Tribunal de Primera Instancia adjudicó correctamente el derecho. Por el contrario, si el foro primario **denegó la moción** de *sentencia sumaria* por entender que existían hechos materiales en controversia, "**el tribunal apelativo solo revisa si el foro primario abusó de su discreción**".[55] En palabras sencillas, los tribunales revisores estamos limitados a: (1) considerar los documentos que se presentaron ante el foro de instancia; (2) determinar si existe o no alguna controversia genuina de hechos

---

[51] *Íd.*
[52] *Rosado Reyes v. Global Healthcare*, 205 DPR 796, 809 (2020); *Rivera Matos et al. v. Triple-S et al.*, 204 DPR 1010, 1025 (2020); *Meléndez González et al. v. M. Cuebas, supra*, pág. 118.
[53] *Birriel Colón v. Supermercado Los Colobos, supra.*
[54] *Rivera Matos et al. v. Triple S et al., supra*, pág. 1025.
[55] *Meléndez González et al. v. M. Cuebas, supra*, pág. 116. (énfasis nuestro).

materiales y esenciales; y (3) comprobar si el derecho se aplicó de forma correcta.[56]

## - B – *ARTÍCULO 1044 DEL CÓDIGO CIVIL DE 1930*

El Artículo 1044 del Código Civil de 1930 instituía que: "[l]as obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes y deben cumplirse al tenor de los mismos".[57] Consecuentemente, un *contrato* existe desde que una o varias personas prestan su consentimiento a obligarse a dar alguna cosa o prestar algún servicio.[58] Este será válido si concurren tres (3) elementos: consentimiento, objeto y causa.[59] Incluso, el Artículo 1230 del Código Civil de 1930 instauraba claramente que "[l]os contratos serán obligatorios, cualquiera que sea la forma en que se hayan celebrado, siempre que en ellos concurran las condiciones esenciales para su validez".[60]

En nuestro ordenamiento, el principio de autonomía contractual permite que las partes contratantes constituyan los pactos, cláusulas y condiciones que entiendan convenientes.[61] En cambio, el *contrato* será nulo e inexistente si es contrario a las leyes, moral o al orden público.[62] Esto, sin importar el tipo de *contrato* del que se trate y la importancia que este merezca para las partes contratantes.[63] En tales casos, cualquiera de las partes

---

[56] *Birriel Colón v. Supermercado Los Colobos, supra*, pág. 5; *Meléndez González et al. v. M. Cuebas, supra*, págs. 114– 116.

[57] 31 LPRA ant. § 2994; El "Código Civil de Puerto Rico", Edición de 1930, fue derogado y sustituido por la Ley Núm. 55-2020, según enmendada, conocida como *"Código Civil de Puerto Rico" de 2020*, 31 LPRA § 5311 *et seq*. Empero, los hechos que originan la presente controversia tomaron lugar durante la vigencia del código anterior, por lo cual esta es la ley que aplica al caso. *VDE Corp. v. F & R Contractors*, 180 DPR 21, 34 (2010); *López v. González*, 163 DPR 275, 281 (2004).

[58] Artículo 1206 del Código Civil de 1930, 31 LPRA ant. § 3371. *Unisys v. Ramallo Brothers*, 128 DPR 842, 852 (1991).

[59] Artículo 1213 del Código Civil de 1930, 31 LPRA ant. § 3391.

[60] 31 LPRA ant. § 3451.

[61] Artículo 1207 del Código Civil de 1930, 31 LPRA ant. § 3372. Véanse *Torres, Torres v. Torres et al.*, 179 DPR 481, 493 (2010); *Oriental Financial v. Nieves*, 172 DPR 462, 470-471 (2007).

[62] *Pepsi-Cola v. Mun. Cidra et al.*, 186 DPR 713, 752 (2012); *Oriental Financial v. Nieves, supra*; *Morales v. Municipio de Toa Baja*, 119 DPR 682, 692-693 (1987).

[63] *De Jesús González v. A.C.*, 148 DPR 255, 263-64 (1999). Véase, además, *Morales v. Municipio de Toa Baja, supra*.

contratantes puede impugnar el *contrato*, aunque se haya beneficiado del mismo.[64]

Referente a la contratación gubernamental, nuestro Tribunal Supremo ha acentuado que **el Estado está obligado por imperativo constitucional a manejar los fondos públicos con los principios fiduciarios y éticos más altos**.[65] En particular, la Sección 9 del Artículo VI de la Constitución de Puerto Rico implanta que "[s]ólo se dispondrá de las propiedades y fondos públicos para fines públicos y para el sostenimiento y funcionamiento de las instituciones del Estado, y en todo caso por autoridad de ley".[66]

Para cumplir con este mandato constitucional, la Legislatura ha aprobado leyes que imponen controles fiscales y de contratación gubernamental.[67] Así, conforme a las disposiciones del Código Civil antes citadas, **un *contrato* entre una parte privada y el Estado que no cumpla con estas leyes será nulo e inexistente**.[68]

En todo caso, "[l]a facultad de contratación del Gobierno de Puerto Rico y de sus entidades, está limitada por las normas estatutarias y jurisprudenciales respecto a la sana administración pública".[69] Por eso, los *contratos* con el Gobierno deben cumplir rigurosamente los requisitos de: (1) reducirse a escrito; (2) mantener un registro fiel para establecer su existencia *prima facie*; (3) remitir copia a la Oficina del Contralor a fin de una doble constancia de su otorgamiento, términos y existencia; y (4) acreditar que se realizó y otorgó quince (15) días antes.[70]

---

[64] *De Jesús González v. A.C., supra*, pág. 264; *Rasa Eng. Corp. v. Daubón*, 86 DPR 193, 198 (1962).

[65] *Rodríguez Ramos et al. v. ELA et al.*, 190 DPR 448, 456 (2014). *Jaap Corp. v. Depto. Estado et al.*, 187 DPR 730, 739 (2013); *C.F.S.E. v. Unión de Médicos*, 170 DPR 443, 452 (2007). (Énfasis nuestro).

[66] Art. VI, Sec. 9, Const. PR, LPRA, Tomo 1, ed. 2008, pág. 429.

[67] *Rodríguez Ramos et al. v. ELA et al., supra*, págs. 456-457; *Jaap Corp. v. Depto. Estado et al., supra*.

[68] Artículo 1207 del Código Civil de 1930, 31 LPRA § 3372. (Énfasis nuestro).

[69] *Engineering Service v. AEE.*, 209 DPR 1012, citando a *Génesis Security v. Depto. Trabajo*, 204 DPR 986, 998-999 (2020). Véase, Art. VI, Sec. 9, Const. PR, LPRA, Tomo 1, ed. 2008, pág. 429.

[70] *Vicar Builders v. ELA et al.*, 192 DPR 256, 264 (2015); *Rodríguez Ramos et al. v. ELA et al., supra*, págs. 461-462. Véase, además, *Demeter Int'l v. Srio. Hacienda*, 199 DPR 706, 729 (2018).

Nuestro Máximo Foro ha reiterado que **las partes que contratan con cualquier entidad gubernamental sin cumplir con los requisitos de contratación gubernamental se arriesgan a asumir la responsabilidad por sus pérdidas.**[71] En fin, surgirá una obligación por parte del Estado "únicamente cuando exista un contrato en virtud de un compromiso legalmente válido".[72] Una vez satisfechos los requisitos aludidos, los *contratos* serán válidos, exigibles y gozarán de la publicidad requerida por nuestro ordenamiento jurídico para la sana administración de la política pública en cuanto a la contratación gubernamental respecta.[73]

- III -

En el caso de marras, el **MUNICIPIO** percibe que incidió el Tribunal de Primera Instancia al cavilar que el señor **BIRRIEL RAMOS** tenía derecho a cobrar $31,561.00 por el trabajo ejecutado durante la vigencia de la *Enmienda B*. Pondera que del Reglamento de la Junta de Subastas y del *Contrato 2019* firmado entre las partes, apunta que: (1) la cantidad máxima que el señor **BIRRIEL RAMOS** podía cobrar por los servicios de inspección era de $87,354.00, aunque el Proyecto se extendiera de su fecha de terminación original; (2) ese monto solo podía ser aumentado si la fecha de terminación se extendía por trabajos adicionales no contemplados en el proyecto original; y (3) si el contrato se paralizaba, el **SEÑOR BIRRIEL RAMOS** no tenía derecho a cobrar durante ese tiempo. La matemática utilizada por el **MUNICIPIO** fue la siguiente: $53,383.00 pagados bajo el *Contrato 2019* más $43,677.00 pagados bajo el *Contrato 2021* y su *Enmienda A* es igual a $97,060.00 cobrados por el señor **BIRRIEL RAMOS**. A su vez, a los $97,060.00 pagados al señor **BIRRIEL RAMOS** le restó la partida de $87,354.00 convenidos en el *Contrato 2019*, lo cual resultó en una diferencia de $9,706.00. Es esa diferencia de $9,706.00 el

---

[71] *Quest Diagnostic v. Mun. San Juan*, 175 DPR 994 (2009). (Énfasis nuestro).
[72] *Vicar Builders v. ELA et al., supra*, págs. 266, citando a *ALCO Corp. v. Mun. de Toa Alta*, 183 DPR 530 (2011), pág. 539.
[73] *Íd.*; *Johnson & Johnson v. Mun. de San Juan*, 172 DPR 840, 853 (2007).

dinero que el MUNICIPIO reivindica fue desembolsado en exceso al señor BIRRIEL RAMOS y no tenía derecho a cobrar.

En cambio, el señor BIRRIEL RAMOS particulariza que cumplió cabalmente con los acuerdos contractuales, pero, el MUNICIPIO quebrantó al no remunerarle por sus servicios. Indicó que las cláusulas contractuales proveían para que se le pagara por el trabajo adicional de inspección.

Como cuestión de umbral, precisa puntear que, a tenor con la normativa atinente a la revisión de *sentencia sumaria*, y justipreciado concienzudamente los respectivos escritos presentados, hallamos que tanto la *Moción de Sentencia Sumaria Parcial* presentada por el MUNICIPIO como la *Oposición a Moción de Sentencia Sumaria Parcial y Moción de Sentencia Sumaria Parcial* presentada por el señor BIRRIEL RAMOS cumplen a cabalidad con los requisitos de forma estatuidos en la Regla 36 de las de Procedimiento Civil de 2009. Ello no dispone sin más de la controversia ante nuestra consideración.

Al revisar la totalidad del expediente judicial, este revela que el foro apelado aplicó correctamente la Regla 36 de las de Procedimiento Civil de 2009. Por todo ello, acogemos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial (no controvertidos) en los incisos 1-24. En vista de ello, es nuestro deber escrutar si el foro de instancia aplicó correctamente el derecho al asunto que nos ocupa. Resolvemos en la negativa.

Si bien no existe controversia en cuanto al otorgamiento de los Contratos 2019 y 2021, y sus respectivas enmiendas, el tribunal incidió al resolver a favor del señor BIRRIEL RAMOS y en contra del MUNICIPIO solo tomando en consideración la teoría general de los contratos. En casos como el de referencia, es necesario auscultar minuciosamente lo concordado entre las partes para poder formular un fallo.

Tras una lectura del mensaje remitido el 9 de abril de 2021 por la Junta de Subasta del **Municipio** dirigida a la Constructora de Aguada, Inc., así como la *Orden de Cambio núm. 5* colegimos que se autorizó la extensión de tiempo del contrato, más **no** concedió la partida de dinero solicitada.[74] Este afirma: "[c]onsiderando la extensión de tiempo de 312 días calendarios, el proyecto se extiende desde el 15 de abril de 2021 hasta el 21 de febrero de 2022. **Relacionado al importe de \$131,585.50 está sujeto a revisión del importe de arbitrios sometidos en la misma**."[75] Por ende, somos del entender que aun cuando la *Orden de Cambio núm. 5* fue evaluada y autorizada por la Junta de Subastas, **esta fue aprobada sujeto a que se revisara el importe de arbitrios**. Tampoco se nos ha suministrado una contestación o aquiescencia al escrito de la misma fecha suscrita por el señor **Birriel Ramos** en la cual recaba la extensión de su *Contrato 2021*.

En vista de que no hay evidencia en el expediente que apunte a la aprobación del importe solicitado, discernimos que le asiste la razón al **Municipio** en cuanto a que el señor **Birriel Ramos** no tenía derecho a cobrar dinero adicional por los servicios brindados, más allá de lo conformado en el contrato original (*Contrato 2019*). Al contratar con el **Municipio** y brindar sus servicios sin asegurarse que la remuneración adicional pretendida fuese asentida, el señor **Birriel Ramos** asumió la responsabilidad por sus pérdidas.[76] Por ese motivo, todo dinero ingresado por el señor **Birriel Ramos** en exceso de los \$87,354.00 negociados en el *Contrato 2019* debe ser reintegrado al **Municipio**.

- IV -

Por los fundamentos antes expuestos, ***revocamos*** la *Sentencia Sumaria Parcial* dictaminada el 26 de noviembre de 2024 por el Tribunal de

[74] Apéndice de la *Apelación*, pág. 175.
[75] *Íd.* (Énfasis nuestro).
[76] Es menester señalar que en el *Contrato 2019* comparecen el alcalde del Municipio de Hatillo y la firma Manuel L. Birriel Ramos PE representado por el ingeniero Birriel Ramos. Por otro lado, en el *Contrato Enmienda B*, comparecen el alcalde del Municipio de Hatillo y el ingeniero Manuel L. Birriel Ramos sin incluir la firma como entidad jurídica independiente.

Primera Instancia, Sala Superior de Hatillo; en consecuencia, *acogemos* los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial (incontrovertidos) consignados en los incisos 1-24 de la *Sentencia Sumaria Parcial*; *ordenamos* al señor **BIRRIEL RAMOS** restituir la cantidad de $9,706.00 pagados en exceso a favor del **MUNICIPIO;** y *devolvemos* el caso al foro primario para la continuación de los procedimientos concerniente a la solicitud de desestimación de la *Reconvención*.

**Notifíquese inmediatamente**.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

La Jueza Cintrón Cintrón concurre con el resultado y hace constar las siguientes expresiones: "En atención a las particularidades que presenta el caso, entiendo se debió disponer del recurso con mayor celeridad".

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones